STATE of Wisconsin, Plaintiff-Respondent,

v.

Leon O. CUMMINGS, D.D.S., Defendant-Appellant,
[Case No. 93–2445–CR]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas NEWTON, Defendant-Appellant. [Case No.
94–0218–CR]

Supreme Court

*Nos. 93–2445–CR, 94–0218–CR. Oral argument November 2,
1995.—Decided April 1, 1996.*

(Also reported in 546 N.W.2d 406.)

726

727

93-2445-CR: For the defendant-appellant there were briefs by *Dean A. Strang, Craig W. Albee* and *Shellow, Shellow & Glynn, S.C.*, Milwaukee and oral argument by *Dean A. Strang*.

For the plaintiff-respondent the cause was argued by *Barbara Oswald,* assistant attorney general, with whom on the brief was *Diane M. Nicks, Barbara Oswald,* assistant attorney generals and *James E. Doyle*, attorney general.

94-0218-CR: For the defendant-appellant there were briefs by *Norman L. Goeschko* and *Love, Voss, Murray & Goeschko*, Waukesha and oral argument by *Norman L. Goeschko*.

For the plaintiff-respondent the cause was argued by *Barbara Oswald*, assistant attorney general, with whom on the brief was *Sharon Ruhly*, assistant attorney general and *James E. Doyle*, attorney general.

DONALD W. STEINMETZ, J. These cases were consolidated by the court of appeals and certified to this court pursuant to Wis. Stat. § 809.61 (1993-94).

Although each case is factually dissimilar, we accepted certification in order to collectively address questions concerning the interpretation of Wis. Stat. § 968.26 (1993-94),[1] the statute authorizing Wisconsin's John Doe proceeding.

There are four issues regarding the John Doe proceeding before this court: (1) does a John Doe judge have the power to issue a search warrant; (2) does a John Doe judge have the power to seal a search warrant; (3) may a district attorney, pursuant to Wis. Stat. § 968.02 (1993-94),[2] issue a criminal complaint to a defendant prior to the conclusion of a John Doe pro-

---

[1] Wis. Stat. § 968.26 provides as follows:

**968.26 John Doe proceeding.** If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in the examination is within the judge's discretion. The examination may be adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but the counsel shall not be allowed to examine his or her client, cross-examine other witnesses or argue· before the judge. If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint may be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused. Subject to s. 971.23, if the proceeding is secret, the record of the proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used. A court, on the motion of a district attorney, may compel a person to testify or produce evidence under s. 972.08 (1). The person is immune from prosecution as provided in s. 972.08 (1), subject to the restrictions under s. 972.085.

[2] Wis. Stat. § 968.02 provides as follows:

ceeding involving that defendant; and (4) what limits are there in the use of a John Doe proceeding by the district attorney once an information has been filed against the defendant. Furthermore, defendant Newton raises various constitutional challenges relating to his Sixth Amendment right to assistance of counsel.

We hold that a John Doe judge may issue and seal a search warrant under appropriate circumstances and that a district attorney may independently issue a criminal complaint regardless of the existence of a John Doe proceeding involving the defendant. We also reaffirm our holding in *State v. Washington*, 83 Wis. 2d 808, 266 N.W.2d 597 (1978), that a John Doe proceed-

---

**968.02 Issuance and filing of complaints. (1)** Except as otherwise provided in this section, a complaint charging a person with an offense shall be issued only by a district attorney of the county where the crime is alleged to have been committed. A complaint is issued when it is approved for filing by the district attorney. The approval shall be in the form of a written indorsement on the complaint.

**(2)** After a complaint has been issued, it shall be filed with a judge and either a warrant or summons shall be issued or the complaint shall be dismissed, pursuant to s. 968.03. Such filing commences the action.

**(3)** If a district attorney refuses or is unavailable to issue a complaint, a circuit judge may permit the filing of a complaint, if the judge finds there is probable cause to believe that the person to be charged has committed an offense after conducting a hearing. If the district attorney has refused to issue a complaint, he or she shall be informed of the hearing and may attend. The hearing shall be ex parte without the right of cross-examination.

**(4)** If the alleged violator under s. 948.55 (2) or 948.60 (2) is or was the parent or guardian of a child who is injured or dies as a result of an accidental shooting, the district attorney may consider, among other factors, the impact of the injury or death on the alleged violator when deciding whether to issue a complaint regarding the alleged violation. This subsection does not restrict the factors that a district attorney may consider in deciding whether to issue a complaint regarding any alleged violation.

ing cannot be used to obtain evidence against a defendant for crimes with which that defendant has already been charged. Finally, we dismiss defendant Newton's Sixth Amendment challenges.

The facts are not in dispute in either case. The initial complaint against defendant Leon Cummings was made to the Sheboygan County Human Social Services Department in April 1991. The complainant, Holly Jean Bartz, was concerned that the defendant, a dentist, was defrauding her 75-year-old aunt, LuEllen Kolk. Mrs. Bartz reviewed her aunt's accounts and allegedly discovered that the defendant charged her aunt more than $55,000 during a three-year period for relatively minor dental work. Mrs. Bartz then examined the defendant's records and apparently found that the defendant's accounting ledgers indicated "NC" (no charge) for appointments for which her aunt had issued a check. Even more suspicious was that these checks had supposedly been endorsed and cashed by the defendant personally rather than having been deposited into the dental office business account.

A petition for a John Doe proceeding was filed by the State on December 17, 1991. The order finding good cause for the John Doe and granting the State's petition for secrecy was signed by Judge Edward Stengel, Sheboygan County Circuit Court, on December 18, 1991. In addition, a search warrant was issued for the records of the defendant on December 18, 1991. Each of these documents was signed by Judge Stengel who identified himself as "Circuit Court, Branch #1." On December 19, 1991, another order was issued by Judge Stengel, "Circuit Court Branch #1," sealing all of the search warrant documents subject to the conditions set forth in the order of secrecy. The search warrant was executed on December 18 or 19, 1991, and was

returned and filed with the clerk of courts on December 19, 1991. A preliminary inventory was filed on December 20, 1991, while a more detailed inventory was filed on December 26, 1991.

The defendant was charged with four counts of theft by fraud on January 8, 1993, by the district attorney. The complaint resulted from information received from numerous sources, including two victims, Patricia Luedtke and LuEllen Kolk, several employees of the defendant, two dentists, the investigator who reviewed the defendant's office records, agents of the Wisconsin Department of Regulation and Licensing and the State Bank of Howard Grove. It is undisputed that the criminal complaint's factual basis consisted entirely of information obtained independently from and without recourse to the John Doe proceeding.

The defendant moved to dismiss the complaint on the grounds that the John Doe procedure had been abused. The Sheboygan County Circuit Court, Judge John B. Murphy, denied this motion finding that a John Doe had never actually commenced. The defendant then moved to suppress the evidence obtained as a result of the search warrant on the grounds that the sealing of the warrant was improper. The court also denied this motion finding that, although there was no authority for sealing the warrant documents, the defendant's remedies did not include suppression since any error caused by the seal was harmless.

Defendant Thomas Newton was arrested on December 1, 1991. This arrest was based upon evidence discovered through a search warrant issued by Manitowoc County Circuit Court, Judge Allan J. Deehr, on the morning of December 1. A John Doe proceeding was not commenced until December 5. The defendant was charged at his arraignment on Decem-

ber 9 with the possession of cocaine with the intent to deliver, failure to pay a drug tax, possession of drug paraphernalia and possession of THC. All of these charges were based upon evidence discovered through the initial search warrants issued before the commencement of the John Doe proceeding.

The defendant filed a motion to dismiss the complaint on September 9, 1992, alleging that the State's improper use of the John Doe proceeding resulted in a lack of competency in the circuit court. Circuit Court Judge Fred H. Hazlewood, Manitowoc County, denied the motion on September 17 for lack of timeliness.

Both defendants appealed the decisions of the circuit courts. The court of appeals consolidated the cases and requested certification by this court. This court accepted certification on February 21, 1995, in order to clarify the roles and delineate the authority of both judges and prosecutors in a John Doe proceeding. These are questions of statutory interpretation which this court reviews de novo without deference to the circuit court or court of appeals. *See Eby v. Kozarek,* 153 Wis. 2d 75, 79, 450 N.W.2d 249 (1990).

A.

The first case, *State v. Cummings,* presents questions regarding the ability of a John Doe judge to issue and seal a search warrant.[3] Defendant first argues that a John Doe judge does not have the power to issue a search warrant since such power is not explicitly granted in the John Doe statute. However, since the

---

[3] These questions are presented only by the facts of *State v. Cummings* and are not at issue in *State v. Newton.*

authority to issue a search warrant is conferred upon all judges independently by Wis. Stat. 968.12,[4] the

---

[4] Wis. Stat. § 968.12 provides as follows:

**968.12 Search warrant. (1)** DESCRIPTION AND ISSUANCE. A search warrant is an order signed by a judge directing a law enforcement officer to conduct a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property. A judge shall issue a search warrant if probable cause is shown.

**(2)** WARRANT UPON AFFIDAVIT. A search warrant may be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter or under sub. (3) (d), showing probable cause therefor. The complaint, affidavit or testimony may be upon information and belief.

**(3)** WARRANT UPON ORAL TESTIMONY. (a) *General rule.* A search warrant may be based upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication, under the procedure prescribed in this subsection.

(b) *Application.* The person who is requesting the warrant shall prepare a duplicate original warrant and read the duplicate original warrant, verbatim, to the judge. The judge shall enter, verbatim, what is read on the original warrant. The judge may direct that the warrant be modified.

(c) *Issuance.* If the judge determines that there is probable cause for the warrant, the judge shall order the issuance of a warrant by directing the person requesting the warrant to sign the judge's name on the duplicate original warrant. In addition, the person shall sign his or her own name on the duplicate original warrant. The judge shall immediately sign the original warrant and enter on the face of the original warrant the exact time when the warrant was ordered to be issued. The finding of probable cause for a warrant upon oral testimony shall be based on the same kind of evidence as is sufficient for a warrant upon affidavit.

(d) *Recording and certification of testimony.* When a caller informs the judge that the purpose of the call is to request a warrant, the judge shall place under oath each person whose testimony forms a basis of the application and each person applying for the warrant. The judge or requesting person shall arrange for all sworn testimony to be recorded either by a stenographic reporter or by means of a voice recording device. The judge shall have the record transcribed. The transcript, certified as accurate by the judge or reporter, as appropriate, shall be filed with the court. If the testi-

John Doe statute need not specifically mention the issuance of search warrants for a John Doe judge to have such power. Furthermore, statutes should be interpreted in a manner which supports their underlying purpose. *See State v. Swatek*, 178 Wis. 2d 1, 6-7, 502 N.W.2d 909 (Ct. App. 1993). This court has repeatedly held that the John Doe proceeding was designed as an investigatory tool to be used as an "inquest for the discovery of crime." *Washington*, 83 Wis. 2d at 822. Denying John Doe judges the ability to issue search warrants would seriously reduce the investigatory power of the John Doe proceeding.

Next, defendant asserts that a John Doe judge does not have the authority to seal a search warrant. [5] It is true that there is no statutory authority in Wiscon-

mony was recorded by means of a voice recording device, the judge shall also file the original recording with the court.

(e) *Contents.* The contents of a warrant upon oral testimony shall be the same as the contents of a warrant upon affidavit.

(f) *Entry of time of execution.* The person who executes the warrant shall enter the exact time of execution on the face of the duplicate original warrant.

(4) LOCATION OF SEARCH. A search warrant may authorize a search to be conducted anywhere in the state and may be executed pursuant to its terms anywhere in the state.

[5] Defendant Cummings also asserts that Wis. Stat. § 968.17 requires that search warrants and the supporting documents be publicly filed with the clerk of courts. Wis. Stat. § 968.17 provides in its pertinent part:

**986.17 Return of Search Warrant. (1)** The return of the search warrant shall be made within 48 hours after execution to the clerk designated in the warrant. The return shall be accompanied by a written inventory of any property taken.

Nothing in this section prohibits a search warrant from being returned and filed under seal. In this case the requirements of the statute were met: the warrant was returned within 48 hours and an inventory of the taken property was executed.

sin granting judges this ability. However, a John Doe judge has been granted jurisdiction, the legal right to exercise its authority, pursuant to Wis. Stat. § 968.27. A grant of jurisdiction by its very nature includes those powers necessary to fulfill the jurisdictional mandate.

The statutory jurisdiction of a John Doe judge has been defined as the authority of the judge to conduct a John Doe investigation. *See In re Wis. Family Counseling*, 95 Wis. 2d 670, 676, 291 N.W.2d 631 (1980). "From a relatively early date . . . the jurisdiction conferred upon [John Doe judges] was adapted to serve a broader investigatory purpose." *Washington*, 83 Wis. 2d at 820. In fact, the function of the John Doe proceeding has almost always been to "ascertain whether [a] crime has been committed and by whom . . . ." *Wolke v. Fleming*, 24 Wis. 2d 606, 613, 129 N.W.2d 841 (1964). This court has recognized that at many times it is desirable for this function to be carried out in secrecy, *see, e.g., State ex rel. Newspaper Inc. v. Circuit Court*, 65 Wis. 2d 66, 72, 221 N.W.2d 894 (1974), and has identified a number of reasons why such secrecy is vital to the very effectiveness of the John Doe proceeding. These include: (1) keeping knowledge from an unarrested defendant which could encourage escape; (2) preventing the defendant from collecting perjured testimony for the trial; (3) preventing those interested in thwarting the inquiry from tampering with prosecutive testimony or secreting evidence; (4) rendering witnesses more free in their disclosures; and (5) preventing testimony which may be mistaken or untrue or irrelevant from becoming public. *See State v. O'Connor*, 77 Wis. 2d 261, 279, 252 N.W.2d 671 (1977).

■

The ability to seal a search warrant is exactly that type of power which a John Doe judge needs to fulfill

the above jurisdictional mandate. A search warrant application, the supporting documents and the evidence obtained through the warrant may at times be integral to a John Doe proceeding and can play a significant role in the ultimate determination by the John Doe judge of whether or not to file a criminal complaint. Therefore, it is only logical that when a John Doe judge determines that it is necessary to keep the proceedings secret pursuant to Wis. Stat. § 968.26, he should be able to keep the warrant and supporting documents secret too. It would make little sense to deny the judge this power when secrecy is at times central to the John Doe proceeding.

In fact, the very reasons identified by this court why secrecy is allowed generally in John Doe proceedings are even more applicable to a warrant and the type of evidence associated with a warrant. For example, real evidence, especially evidence such as records, ledgers or journals, is very susceptible to tampering, removal or destruction by a defendant. Furthermore, it is the type of evidence which could be especially damaging or humiliating to the defendant if made public.

Defendant Cummings cites various cases which he asserts hold that John Doe judges only have those powers specifically granted to them by the statute. In fact, these cases hold nothing of the sort. In *State v. Brady*, 118 Wis. 2d 154, 345 N.W.2d 533 (Ct. App. 1984) the issue was whether a John Doe judge could issue a material witness arrest warrant when the applicable statute only allowed such warrants to be issued during a "felony criminal proceeding." The court of appeals determined that since a John Doe proceeding was not a felony criminal proceeding, the John Doe judge did not have such power. *See id.* at 157. Since the search warrant statute central to this case does not have a felony

criminal proceeding requirement, it is unclear how *Brady* is applicable at all.

Cummings also cites to *State ex rel. Niedziejko v. Coffey*, 22 Wis. 2d 392, 126 N.W.2d 96 (1964). However, *Niedziejko* holds that it was an abuse of the John Doe judge's discretion when he violated the secrecy of a John Doe proceeding which he himself had made secret. *See id.* at 399-400. Nowhere does *Niedziejko* limit a John Doe judge's powers to those specifically enumerated in the statute. Finally, Cummings sets forth *State ex rel. v. Coffey*, 18 Wis. 2d 529, 118 N.W.2d 939, 942-43 (1963). However, the holding in *Coffey*, like that in *Brady*, was solely based upon the statutory language applicable to that case. In *Coffey*, a John Doe judge attempted to compel self-incriminating testimony pursuant to Wis. Stat. § 325.34 (1963-64). However, this statute only granted a *court* such authority. Distinguishing between a court and a judge, this court held that a John Doe judge does not have the statutory powers of a *court*. *See id.* at 536. This conclusion is indubitably correct. Nevertheless, a John Doe judge still enjoys those powers that are conferred to all judges by statute.

■
The fact that a John Doe judge has the authority to seal a search warrant does not, however, end the inquiry. Whenever *any* judge seals a search warrant, fundamental rights may be implicated. The United States Supreme Court has identified at least two sets of rights which are involved when court documents are kept from public scrutiny: (1) those rights guaranteed under the First Amendment and (2) the common law right of public access. Which right attaches depends on whether search warrants and search warrant materials are considered simply "judicial records," and

therefore governed by the common law public right to access discussed in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978), or search warrants and supporting documents are considered part of a criminal proceeding and therefore given the full First Amendment protection discussed in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) (*Press Enterprise I*) and *Press Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) (*Press-Enterprise II*). The federal appellate courts which have addressed this question are, unfortunately, split.[6]

When deciding whether a judicial process is part of a criminal proceeding, a court must inquire whether: (1) "the place and process have historically been open to press and the general public" and (2) "public access plays a significant positive role in the functioning of the particular process in question." *Press Enterprise II*, 478 U.S. at 8. The application for a search warrant has not historically been open to the public or press. The Supreme Court itself has recognized, albeit in a different context, the private nature of the issuance of a search warrant. In *Franks v. Delaware*, 438 U.S. 154, 169 (1978), the Court noted that the proceeding for issuing a search warrant is "necessarily *ex parte*, since

---

[6] Both the Fourth Circuit and Ninth Circuit Court of Appeals have held that search warrants and supporting documents are not granted First Amendment protection. *See In re Baltimore Sun*, 886 F.2d 60, 64-65 (4th Cir. 1989); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213-19 (9th Cir. 1989). The Eighth Circuit Court of Appeals, however, has held that the materials supporting a search warrant are guaranteed First Amendment protection although the actual application for a warrant is not. *See In re Search Warrant For Secretarial Area Outside the Office of Thomas Gunn*, 855 F.2d 569, 572-73 (8th Cir. 1988).

the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." Furthermore, in *United States v. United States District Court*, 407 U.S. 297, 321 (1972), the Court commented in dicta that "a warrant application involves no public or adversary proceedings: it is an *ex parte* request before a magistrate or judge."

■

The reasoning of *Franks* and *U.S. District Court* is equally applicable to the material supporting a search warrant. As the Ninth Circuit noted: "The warrant process . . . would be equally threatened if the *information disclosed during the proceeding* were open to public scrutiny . . . ." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1217 (1989). Therefore, since search warrants and supporting materials do not meet the first prong of the *Press-Enterprise II* test, we align ourselves with the Fourth and Ninth Circuit Courts and hold that such materials are not part of criminal proceedings and therefore not afforded First Amendment protection.[7]

*Nixon*, however, still clearly attaches a qualified common law right of access to judicial documents based upon the desire of citizens "to keep a watchful eye on the workings of public agencies . . . ." *Nixon*, 435 U.S. at 598. It is equally apparent, though, that this common law right of public access is not absolute. *See id.* at 598.

The two federal circuit courts which have applied the reasoning of *Nixon* to search warrant cases are further split regarding the proper balance between the

[7] The federal district court for the Eastern District of Wisconsin seems to have come to the same conclusion. *See Matter of Search of Residence at 14905 Franklin Dr.*, 121 F.R.D. 78, 80 (E.D. WI 1988). Its opinion, unfortunately, does not address this issue directly.

public's right to access and the state's interest in pursuing criminal investigations. The Ninth Circuit Court of Appeals has held that the public right of access to search warrants and supporting materials never attaches during a criminal investigation or prosecution. *See Times Mirror*, 873 F.2d at 1219. The Fourth Circuit Court of Appeals, however, has held that the decision whether the public right of access to search warrant materials is committed to the sound discretion of the circuit court. *See In re Baltimore Sun*, 886 F.2d 60, 64-65 (4th Cir. 1989). However, both courts have agreed upon one general principle: at some point the public's right of access must defer to the state's interest in effectively pursuing criminal investigations. *See Baltimore Sun*, 886 F.2d at 66; *Times Mirror*, 873 F. 2d 1219. Wisconsin case law is in accord with this general principle. *See In re Wis. Family Counseling Services v. State*, 95 Wis. 2d at 673. The question of how to strike a proper balance between these two countervailing interests in the context of search warrants, though, is one of first impression for this court.

■

We conclude that the Fourth Circuit's approach, allowing the circuit court to balance the State's interest in keeping criminal investigations secret against the public's common law right of access, is sounder than the Ninth Circuit's bright-line rule of never recognizing a public right of access to search warrants and supporting materials during a criminal investigation. Although bright-line rules provide the best means of protecting individual liberties, a balancing test is better suited for answering the fact-sensitive question of whether a search warrant should be sealed. Therefore, in order to give effect to both important interests, we hold that before a judge decides to seal a search war-

rant, he must balance the State's reasons for desiring secrecy against the public's right of access. Due to the fact-specific nature of such an inquiry, this balancing is appropriately committed to the sound discretion of the circuit court. *See Matter of Application & Aff. for a Search Warrant*, 923 F.2d 324, 326-28 (4th Cir. 1991). The court, though, must make specific enough findings of fact on the record to allow for appellate review.

Although the John Doe judge who sealed the search warrant did not specifically engage in the type of balancing required by this opinion, the record supports the conclusion that the State had a significant reason, namely the prevention of untrue or irrelevant testimony being made public, for wanting the information to be kept secret. The circuit court could have reasonably determined that the danger to Cummings' reputation was great enough to grant this request.

It should be noted that this case does not present a situation where the defendant was requesting access to the warrant or warrant materials in order to either prepare for a motion or for the trial itself. In fact, the materials in question are no longer under seal and have been made available to Cummings. The defendant, of course, has a constitutional right to the warrant information at such time. Before this time, however, the rationale for denying the public access to the warrant and warrant materials is equally applicable, if not more so, to the defendant as it is to the general public. Cummings, for good reason, does not argue that he needed the information under seal to prepare his defense: the proceedings in his case had not yet reached the point where such information would have been necessary.

## B.

■ This court next addresses the effect, if any, of a contemporaneous John Doe proceeding on the ability of a prosecutor to issue a complaint.[8] We find that the existence of a John Doe proceeding does not affect the ability of a prosecutor to charge a defendant with any crime, even if the charge includes a crime that was the basis for the initiation of the John Doe.

The plain language of the applicable statutes and our interpretive case law make this conclusion readily apparent. In *State v. Unnamed Defendant*, 150 Wis. 2d 352, 441 N.W.2d 696 (1989), we found that the legislature has given prosecutors the primary power to charge criminal offenses pursuant to Wis. Stat. §§ 968.02 and 968.02(3). Nowhere in these sections is the district attorney's authority to issue criminal complaints limited by the initiation of a John Doe proceeding.

Wisconsin Statute § 968.26, the John Doe statute, also does not discuss any limitation on the district attorney's authority to issue a criminal complaint. Instead, this court's decisions have cast the John Doe judge as a relatively supervisory participant in the proceeding. As we stated in *Washington*, 83 Wis. 2d at 823:

> [we] reject Washington's characterization of the judge as inevitably the 'chief investigator' or as an arm or tool of the prosecutor's office. We do not view the judge as orchestrating the investigation. The John Doe judge is a judicial officer who serves an essentially judicial function. The judge considers the testimony presented. It is the responsibility of the John Doe judge to utilize his or her training in

---

[8] This issue is raised in both *State v. Cummings* and *State v. Newton*.

constitutional and criminal law and in courtroom procedure in determining the need to subpoena witnesses requested by the district attorney, in presiding at the examination of witnesses, and in determining probable cause. It is the judge's responsibility to ensure procedural fairness.

(Footnote omitted.) Read together, the statutes and the case law support the proposition that the John Doe is an independent, investigative proceeding overseen by a neutral judicial officer. There is no basis to conclude that the proceeding in any way abridges the autonomous prosecutorial powers granted to district attorneys by the legislature.

This court addressed a similar situation in *State v. O'Connor*, 77 Wis. 2d 261, 274, 252 N.W.2d 671 (1977). In *O'Connor*, a Milwaukee County court commissioner issued a warrant for a defendant's arrest even though a John Doe judge in Dane County had not found probable cause that a felony had been committed. We found this to be an acceptable exercise of the commissioner's authority and stated:

If evidence adduced in the John Doe investigation together with information obtained by the authorities from other sources amounts to probable cause, we see no reason why a criminal action may not be initiated by means of a complaint filed with and a warrant issued by any judge or court commissioner having jurisdiction to act in the case.

*Id.* at 274. This reasoning is equally applicable to a district attorney who, as already noted, has express statutory power to commence a criminal proceeding. In fact, we see no reason why a district attorney could not independently file a complaint based solely upon evidence obtained through a John Doe proceeding, even if

it was the district attorney who initiated the John Doe. Our discussion in *O'Connor* lends additional support to this conclusion: "The statutory jurisdiction of the Milwaukee county court commissioner who issued the warrant for defendant's arrest was not impaired by the fact that the complaint was based upon evidence adduced in a John Doe proceeding." *Id.* at 275. It is clear that the county court commissioner's authority to issue an arrest warrant was independent from, and unaffected by, the fact that the issuance of the warrant was based upon evidence gathered at a John Doe proceeding. The same holds true for the district attorney's authority to initiate criminal proceedings.

This is not to say, however, that there are no limitations to the use of John Doe proceedings. We specifically held in *Washington* that a John Doe proceeding cannot be used to obtain evidence against a defendant for a crime with which the defendant has already been charged. *See Washington*, 83 Wis. 2d at 824. A John Doe proceeding cannot be continued " 'as an aid to the district attorney in preparing the prosecution.' " *Id.* Such use is a clear abuse of the process.

██
The court of appeals has correctly noted that the rule in *Washington* does not "establish[ ] when such an abuse can be said to occur, or what its remedy should be." *State v. Hoffman*, 106 Wis. 2d 185, 205, 316 N.W.2d 143 (Ct. App. 1982). Therefore, in order to more clearly delineate when a John Doe is being used as an impermissible aid in prosecution, we hold today that a John Doe proceeding may be continued after a criminal complaint is filed against the defendant only in order to: (1) investigate other possible defendants related to the crimes that will be charged in the information filed against the original defendant, and (2) investigate

other crimes that cannot be charged in the information, but may have been committed by the defendant.[9] For example, if there are numerous persons and crimes being investigated under a theory of conspiracy, the judge may continue its John Doe until a review of all suspected criminal behavior and perpetrators has been completed. It is only when the John Doe is used to gather evidence specifically relating to the crime for which the defendant is being tried that an abuse of the procedure occurs. As the court of appeals correctly concluded in *Hoffman*, the appropriate remedy for such an abuse of the John Doe proceeding is suppression of any evidence so obtained. *See id.* at 206.

Neither case before us presents a scenario where the John Doe proceeding was abused. In *State v. Cummings* there was no testimony taken through the John Doe proceeding and the criminal information was based entirely on evidence obtained independently of the John Doe proceeding. Furthermore, the John Doe was not used to gather evidence of any type once the information was filed. The district attorney's decision to charge the defendant was simply an exercise of the authority granted to him by statute.

In *State v. Newton* the John Doe was continued after the information against the defendant had been filed. The proceeding, though, focused on the defendant's attempts to hire persons as enforcers and was aimed at developing a case against the defendant on a

---

[9] For a discussion regarding when a criminal charge can be included in an information, *see generally State v. [Scott] Williams*, 198 Wis. 2d 479, 544 N.W.2d 400 (1996); *State v. Akins*, 198 Wis. 2d 495, 544 N.W.2d 392 (1996); *State v. [John] Williams*, 198 Wis. 2d 516, 544 N.W.2d 406 (1996).

conspiracy count that was not transactionally related to the counts contained in the information. It is clear from the record that the John Doe was not used to develop a case against the defendant for the specific crimes alleged in the information. This type of use of a John Doe, as we stated earlier, is permissible. Given the defendant's arrest on the instant charges prior to commencement of the John Doe, and given the separate nature of the John Doe, we find no abuse of the proceeding by the district attorney.

## C.

Defendant Newton also claims that his Sixth Amendment right to assistance of counsel was violated in at least two instances: (1) the circuit court allowed the withdrawal of two of his court-appointed attorneys, and (2) the circuit court "forced" him to proceed pro se even though he did not verbally waive his right to representation.[10] A defendant's right to assistance of

---

[10] The State asserts that Newton's counsel did not properly preserve his objections to the John Doe proceeding at the trial level. Therefore, Newton argued in the alternative that if this court decided not to hear Newton's challenges, he would then have had an ineffective assistance of counsel claim based on his counsel's improper waiver.

In order for Newton to have proven his claim, he would have had to establish that Attorney Wedemeyer's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687, *rehearing denied* 467 U.S. 1267 (1984). It is well-established that an attorney's failure to pursue a meritless motion does not constitute deficient performance. *See generally Jones v. Barnes*, 463 U.S. 745 (1983); *State v. Harvey*, 139 Wis. 2d 353, 380, 407 N.W.2d 235 (1987). Since this opinion conclusively establishes that

counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article I, sec. 7 of the Wisconsin Constitution.[11] *See Strickland v. Washington*, 466 U.S. 668, 694, *rehearing denied*, 467 U.S. 1267 (1984); *State v. Wirts*, 176 Wis. 2d 174, 180, 500 N.W.2d 317 (Ct. App. 1993) *cert. denied*, 114 S. Ct.; 259 (1993). Whether an individual is denied a constitutional right is a question of constitutional fact that this court reviews independently as a question of law. *See State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1983) *citing State v. Mazur*, 90 Wis. 2d 293, 309, 280 N.W.2d 194, 201 (1979).

Newton first argues that the circuit court abused its discretion by allowing his first and third court-appointed attorneys to withdraw. Once representation in a criminal case is undertaken, a court-appointed counsel cannot unilaterally decide to terminate the attorney-client relationship. *See State v. Johnson*, 50 Wis. 2d 280, 283, 184 N.W.2d 107, 109 (1971). Instead, only the circuit court can relieve an attorney from his duty of representation, and then only if the court is

Newton's John Doe challenges are without merit, any ineffective assistance of counsel claim which Newton may have had has now become untenable.

[11] Art. I, sec. 7 of the Wisconsin Constitution provides as follows:

> **Rights of accused.** SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

satisfied that there is good cause to permit the withdrawal. *See id.* at 285. This determination is left to the sound discretion of the circuit court. *See id.* at 283; *State v. Haynes*, 118 Wis. 2d 21, 27, 345 N.W.2d 892, 896 (Ct. App. 1984).

In exercising its discretion, one of the basic findings of a circuit court should be whether the attorney-client relationship between the court-appointed counsel and the defendant remains viable. It makes little sense to require the continuance of an attorney-client relationship which is not contributing to the preparation of a defendant's defense. Such a relationship neither furthers the underlying principles of the Sixth Amendment nor the public's interest. Under this standard, the circuit court did not abuse its discretion in allowing the withdrawal of Newton's first court-appointed counsel, Attorney Wedemeyer. The circuit court made ample findings of fact that not only was the defendant unsatisfied with his counsel's performance, but that Attorney Wedemeyer honestly felt that the attorney-client relationship had become irrevocably broken.[12]

---

[12] Defendant cites *State v. Batista*, 171 Wis. 2d 690, 492 N.W.2d 354 (Ct. App. 1992) for the proposition that every defendant is entitled to a hearing before the court can allow a court-appointed counsel in a criminal proceeding to withdraw. We decline, however, to adopt such a bright-line rule. In situations where a court can reasonably conclude that a request for termination of representation is not based upon unsubstantiated allegations by counsel, but is instead based upon the irretrievable breakdown of the attorney-client relationship, a circuit court can allow withdrawal without providing a hearing for the defendant. This is especially true if successor counsel has already been appointed.

A circuit court should also consider the "avoidance of delay or dilatory tactics" when deciding whether to allow withdrawal. *Johnson*, 50 Wis. 2d at 283; *see also State v. Kazee*, 146 Wis. 2d 366, 372-73, 432 N.W.2d 93 (1988). The circuit court correctly applied this principle when it allowed Attorney Haller, Newton's third court-appointed counsel, to withdraw.[13] The record shows that a desire to delay the proceedings was the sole basis for Newton's continued dissatisfaction with his court-appointed counsel. It is obvious from the circuit court's comments that although Newton was continuously and unreasonably dissatisfied with each of his attorneys,

In this case the circuit court had before it correspondence from the defendant emphatically stating the defendant's distrust of and dissatisfaction with Attorney Wedemeyer. Since it was clear that successor counsel would be appointed, it would have been useless for the circuit court to continue a relationship with which the defendant himself was dissatisfied. It is unclear how the circuit court could have gained more information regarding the situation by requiring a hearing. In fact, all that could have been gained from a hearing would have been a delay of the trial and a senseless waste of public funds.

This is not to say that there are not situations where it will be constitutionally necessary for the circuit court to provide the defendant with a hearing. However, unlike the *Batista* court, we find that balancing a defendant's constitutional rights against the public's interest in the efficient and orderly administration of justice provides a more flexible standard for determining the necessity of a hearing. Any holding in *Batista* which is inconsistent with this opinion is hereby overruled.

[13] It reached its decision after at least one hearing where the defendant was present and a deluge of correspondence between the court, Attorney Haller and the defendant.

especially Attorney Haller,[14] he was also unwilling to voluntarily waive his right to counsel. The circuit court characterized this vacillation as merely a tactic employed by Newton to prevent his case from going to trial, remarking at one point:

> Mr. Newton has filed another letter with the Court, and [it] isn't a very surprising letter. I don't mean that as a comment on Mr. Haller. It's not surprising coming from Mr. Newton. It's kind of typical of the correspondence he has been filing and I would note for the record I think the record amply demonstrates Mr. Newton has his own agenda in this matter and it's not consistent with his own legal interests except insofar as he can hopefully, from his standpoint, create a record that will allow him, if he is convicted of this offense, to spend a considerable period of time filing appeals.

The court concluded that nothing would be gained from Attorney Haller's continuing representation of Newton since Newton had his own agenda based on delay and obfuscation and refused to accept Attorney Haller's advice or legal analysis. Allowing withdrawal was appropriate under such circumstances.

The second Sixth Amendment violation asserted by Newton is based on the circuit court allegedly

[14] Although this court makes no judgment on Attorney Haller's performance, the trial court did not perceive Mr. Haller as incompetent, remarking:

I have known him [Attorney Haller] to be an effective advocate for his clients. I have known Mr. Haller to be very good even in setting up appeal issues, and he has been successful in this Court on at least one occasion . . . and he made a very good record, and it was very perceptive . . . and I have complimented him off the record on that and I will compliment him on the record.

751

*requiring* him to proceed pro se, after his third court-appointed counsel had withdrawn, even though he had not verbally waived his right to counsel. Newton is correct that a defendant can generally only proceed pro se if the circuit court first determines that the defendant voluntarily and knowingly waived his or her right to counsel. *See Pickens v. State*, 96 Wis. 2d 549, 568-69, 292 N.W.2d 601 (1980); *State v. Haste*, 175 Wis. 2d 1, 22, 500 N.W.2d 678 (Ct. App. 1993). In *Pickens* we declared that because of the importance of a defendant's right to counsel, "nonwaiver is presumed and waiver must be affirmatively shown to be knowing and voluntary in order for it to be valid." *Pickens*, 96 Wis. 2d at 555.

However, unusual circumstances, "most often involving a manipulative or disruptive defendant," permit a court to find that the defendant's voluntary and deliberate choice to proceed pro se has occurred by operation of law. *Haste*, 175 Wis. 2d at 22; *see also State v. Woods*, 144 Wis. 2d 710, 715-16, 424 N.W.2d 730 (Ct. App. 1988). In *Woods* the court of appeals stated:

> In such a situation, a waiver of counsel and the deliberate choice to proceed *pro se* occurs, not by virtue of a defendant's express verbal consent to such procedure, but rather by operation of law because the defendant has deemed *by his own actions* that the case proceed accordingly.

*Id.*, at 715-16. In *Woods* the circuit court required the defendant to proceed pro se after he dismissed five different court-appointed attorneys, the last one a day before trial.

Newton's posturing is very similar to the tactics employed by the defendant in *Woods* who was "unwilling to proceed with a public defender, but [who] also

752

refus[ed] to waive his right to counsel."[15] *Id.* at 713. Although Newton never actually requested his various court-appointed attorneys to withdraw, he consistently refused to cooperate with any of them and constantly complained about their performance. There can be no doubt from the record that Newton's behavior was manipulative and disruptive and that his continued dissatisfaction was based solely upon a desire to delay. The circuit court clearly stated: "While the record is clear that the defendant never said, 'I don't want an attorney,' the record is also clear he did everything

[15] The dissent attempts to distinguish this case from *Woods* by concentrating on two "key differences." First, the dissent focuses on the trial court's warning to the defendant in *Woods* that continued obstruction and delay would result in forfeiture of his right to counsel. However, the court in *Woods* never stated that such a warning is required before forfeiture can occur. Instead, the opinion makes clear that the triggering event for forfeiture is when the "court becomes convinced that the orderly and efficient progression of the case [is] being frustrated . . . ." *Woods*, 144 Wis. 2d at 715. Furthermore, the trial court in this case *did* inform Newton that his last chance to obtain counsel was conditioned upon his contacting the office of the State Public Defender (SPD). It was made clear to Newton that if he did not make such an attempt, or if the SPD denied his request, then he would be required to proceed pro se. This is very similar to the warning given to the defendant in *Woods*.

Second, the dissent places great import on the fact that the trial court in *Woods* provided standby counsel to the defendant while the trial court in this case did not. However, as discussed more fully infra at 755-57, the decision to appoint standby counsel is left to the discretion of the trial court and is not based upon any constitutional guarantees. As such, this distinction between the two cases is immaterial to the question of whether Newton's Sixth Amendment rights were violated.

possible to make it impossible for an attorney to effectively represent him."

In fact, the court did not even appoint Newton standby counsel since it found Newton's tactics so egregious[16] and his attitude so uncooperative that it felt further representation of any sort would have been useless. As this court has noted, the decision to appoint standby counsel is left to the discretion of the trial court. *See Contempt in State v. Lehman,* 137 Wis. 2d 65, 78, 403 N.W.2d 438 (1987). A trial court should base its decision on "the needs of the *Trial Court* and not the Defendant"[17] and also on whether standby counsel will

---

[16] The trial court actually found that acquiescence to Newton's tactics by an attorney could possibly result in the attorney breaching his or her ethical obligations to the court. The Code of Professional Conduct in the State of Wisconsin provides:

> (a) In representing a client, a lawyer shall not:
>
> 1. knowingly advance a claim or defense that is unwarranted under existing law . . .;
> 2. knowingly advance a factual position unless there is a basis for doing so that is not frivolous; or
> 3. file a suit, assert a position, conduct a defense, delay a trial or take other action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another.

SCR 20:3.1. It is plain that the tactics engaged in by Newton throughout the pre-trial proceedings are violative of at least one, if not all, of these tenets.

[17] Standby counsel is for the convenience of the trial court, not the defendant. Our holding in *Lehman* makes this quite apparent. *See Lehman,* 137 Wis. 2d at 77. The dissent implies that the discretionary decision of the trial court to appoint standby counsel is somehow associated with a defendant's Sixth Amendment right to counsel. It cites *McKaskle v. Wiggins,* 465

help the "trial proceed in an orderly fashion." *See id.*
Considering Newton's relationship with his three prior

U.S. 168, 183 (1984) to support its position that "standby counsel serves . . . to safeguard a defendant's constitutionally protected rights . . . ." This reading of *McKaskle* is quite broad. The issue in *McKaskle* was whether the *appointment* of standby counsel (not the lack of appointment) interfered with a defendant's right to proceed pro se. The United States Supreme Court held that a court's appointment of standby counsel to ensure the orderly administration of justice does not impede the right of an individual to represent himself or herself. *See id.* at 184. This holding in no way, expressly or impliedly, establishes a Sixth Amendment *right* to standby counsel for pro se defendants.

The important distinction overlooked by the dissent is the difference between a trial court's exercise of discretion in determining whether to appoint standby counsel versus a trial court's outright denial of a defendant's request for standby counsel. In the first situation, such as is presented by this case, this court has clearly held that the decision to appoint standby counsel "is not tied to any constitutional *right* that the defendant may have to counsel." *Lehman*, 137 Wis. 2d at 76 (emphasis added). This language could not be clearer: the decision to appoint standby counsel is distinct from any constitutional discussion of whether a defendant was denied his right to counsel. It simply is not a factor used in determining whether a constitutional violation of a defendant's right to counsel has occurred.

The second situation is quite different. It poses the question of whether a court's denial of a *request* for standby counsel by a pro se defendant, who has already waived his right to counsel, violates any constitutional guarantees. This court specifically declined to answer this question in *Lehman* since the defendant had not ever requested standby counsel. Similarly, the defendant in the present case never requested standby counsel either. Of course, if the defendant *had* requested standby counsel, this court would have had the additional task of determining whether there is any difference between such a

court-appointed attorneys, it was eminently reasonable for the trial court to have concluded that not only would standby counsel not benefit the trial, but that standby counsel could have in fact hindered the trial's orderly administration.

Therefore, this court holds that there may be situations, such as the one before us, where a circuit court must have the ability to find that a defendant has forfeited his right to counsel.[18] If it did not, an intelligent defendant such as Newton could theoretically go through tens of court-appointed attorneys and delay his trial for years. As the circuit court noted:

> I do not believe the Sixth Amendment gives to a sophisticated individual like Mr. Newton, whose attitude up to this point in time has been to delay, obfuscate and compound the process of justice, the right to a law clerk nor does it require a lawyer to be put in a position of having to be party to that type of an approach.

This conclusion is supported by the United States Supreme Court's analysis of another Sixth Amendment right, the right to be present at trial. In *Illinois v. Allen*, 397 U.S. 337, 342-43 (1970) the Court found that

request by a pro se defendant who has *waived* his right to counsel and a pro se defendant who has *forfeited* his right to counsel. However, such a discussion is purely hypothetical: a request by the defendant was never made in this case. Therefore, as in *Lehman*, we pass on resolving an issue which is wholly tangential to the specific issues before us.

[18] Although we find the trial court's actions acceptable in this case, we recommend that trial courts in the future, when faced with a recalcitrant defendant, follow the first four steps outlined in the dissent before determining that a defendant has forfeited his or her right to counsel. Dissent at 768.

the Sixth Amendment does not bestow upon a defendant absolute rights and that a defendant can forfeit Sixth Amendment rights through his or her own disruptive and defiant behavior. In the case before us, it was clearly Newton's own behavior—and not that of any other person or institution—which resulted in the forfeiture of his right to counsel. He continuously refused to cooperate with his court-appointed attorney while at the same time refused to waive his right to counsel. Such tactics cannot be condoned when they are used solely to "interfere with the proper administration of criminal justice." *Id.* at 343.

Under these facts alone, we would be hard pressed not to find that Newton forfeited his Sixth Amendment right to counsel. The trial court, however, gave Newton one more chance to secure counsel before his trial by very clearly placing the duty on Newton to contact the State Public Defender (SPD) in order to obtain a fourth attorney. In fact, about five weeks before the date of the trial, the court notified the SPD by letter that Newton was without counsel and that Newton would be contacting it if he wished another attorney.

There is no evidence that Newton ever attempted to contact the SPD subsequent to Attorney Haller's withdrawal. Considering the surrounding circumstances and the difficulties created by Newton throughout the entire proceeding, this lack of initiative by Newton clearly represented to the court that he wished to proceed pro se. As such, it was solely through the defendant's own actions that the case proceeded in such a manner. As the trial court noted, "the history of this case demonstrates that Mr. Newton has never, at least in my experience, intended to rely upon any attorney at all, but rather on his own efforts."

757

Newton asserts that the SPD has an affirmative duty to appoint new counsel every time a public defender is allowed to withdraw by the court. Although the language of Wis. Admin. Code § SPD 2.04 (1991)[19] may place such a duty on the SPD in some instances,[20] it is not clear whether such a duty attached in this case. There is nothing in the record to show that Newton ever approached the SPD as directed by the judge or that the SPD ever approached him pursuant to the judge's notice. We assume, then, that the SPD's only knowledge of Newton's situation was based on the judge's letter. Since the SPD was informed by the judge to wait until Newton contacted it regarding another attorney, the SPD had no reason to believe it needed to affirmatively seek out Newton. Even if the SPD was under some duty to monitor Newton's case, this court sees no reason why a defendant, especially one who has already had three attorneys withdraw from his representation, should be able to refuse to affirmatively exercise his rights in the hope that he can benefit from an administrative oversight.

We approve of the actions of the circuit court in this case and the court of appeals' decision in *State v. Woods*, 117 Wis. 2d 701. As such, we hold that the circuit court properly allowed Newton's first and third

[19] SPD 2.04 Person's right to refuse specific attorney.

. . . .

(2) In the event the court or public defender authorizes an attorney to withdraw, the state public defender shall assign the attorney who appears on the top of the appropriate certification list and place the original attorney's name on the top of that list.

[20] Consider for example the dicta in *State v. Batista*, 171 Wis. 2d 690, 704, 492 N.W.2d 354 (Ct. App. 1992).

public defenders to withdraw and correctly determined that he had forfeited his Sixth Amendment right to counsel.

*By the Court.*—The judgment of the Sheboygan County Circuit Court is affirmed. The judgment of the Manitowoc County Circuit Court is affirmed.

JANINE P. GESKE, J. (*dissenting*). I dissent from the portion of the majority opinion that concludes that Newton waived his Sixth Amendment right to counsel and approves of the circuit court's actions in this regard. There is no indication in the record that Newton knowingly and voluntarily relinquished his right to counsel. Similarly, there is no evidence that Newton was warned that if he persisted in a mode of conduct that the court considered obstructive and dilatory, he would be deemed to have waived counsel and would be required to continue with proceedings pro se. Therefore, I conclude that Newton's conviction must be reversed because it was obtained without the assistance of counsel and without a valid waiver of the right to counsel.

The right to counsel is a clear and critical component of both the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.[1] This court has recognized that the right to be represented by counsel in a criminal trial is so important that nonwaiver is presumed. *Pickens v. State*, 96 Wis. 2d 549, 555, 292 N.W.2d 601 (1980). Waiver cannot be assumed from a silent record, rather

---

[1] Contrary to the trial court's assertion that the Sixth Amendment right to an attorney is "an inferred right," both the federal and state constitutions contain express guarantees of this fundamental right.

759

the record must show that the defendant intelligently and knowingly rejected the offer of assistance of counsel. *State v. Baker*, 169 Wis. 2d 49, 76-77, 485 N.W.2d 237 (1992). Where the record does not evidence a valid waiver, a conviction of an unrepresented defendant cannot stand. *See Baker*, 169 Wis. 2d at 78, 55-56 (where record did not show, and State did not meet burden of proving, a knowing, voluntary and intelligent waiver, defendant's conviction was constitutionally infirm because obtained without counsel); *Keller v. State*, 75 Wis. 2d 502, 509, 511-12, 249 N.W.2d 773 (1977) (order reversed where record was insufficient to determine "whether the constitutional rights of the defendant to counsel were fully considered by the trial court"). Further, a valid (i.e. knowing and intelligent) waiver is "an essential prerequisite to a defendant's proceeding alone . . ." *Pickens*, 96 Wis. 2d at 555.

The record contains no affirmative evidence of waiver. In fact, the defendant repeatedly stated that he opposed his attorney's motion to withdraw and in granting Attorney Haller's motion the court noted that it did so over Newton's objection. The circuit court concluded that Newton had "constructively waived" his right to the assistance of counsel.[2] Although the majority concludes that the defendant waived his right to

[2] In denying Newton's post-conviction motion which was based on a claim of lack of waiver, the circuit court stated:

> While the record is clear that he never said, I don't want an attorney, the record is also clear he did everything possible to make it impossible for an attorney to represent him. Now, whether you want to call that a waiver, that would be the technical term, I'll leave that up to the Court of Appeals. I would call it a waiver. Certainly the voluntary relinquishment of a known right, Mr. Newton knew what was going to happen.

counsel, it concedes that Newton was "unwilling to voluntarily waive his right to counsel." Majority op. at 752. The majority finds the solution to this apparent conundrum in a court of appeals decision, *State v. Woods*, 144 Wis. 2d 710, 715-16, 424 N.W.2d 730 (Ct. App. 1988) which proposes that, in unusual circumstances such as when a defendant is disruptive or manipulative, a court may "find that the defendant's voluntary and deliberate choice to proceed pro se has occurred by operation of law." Majority op. at 753. According to the majority, Newton's behavior was manipulative, disruptive and "based solely upon a desire to delay," and thus the circuit court was justified in finding that he had forfeited his right to counsel. Majority op. at 754.

However, there are several key differences between Woods' and Newton's cases, most importantly—the circuit court "properly forewarned" Woods of the potential consequences of his behavior and, at the critical stage of trial, provided the defendant with the safety net of standby counsel. *Woods*, 144 Wis. 2d at 715. In *Woods*, the defendant's fourth appointed attorney filed a motion to withdraw on the basis that Woods refused to follow the attorney's advice on trial strategy. In granting the motion, the court warned Woods that he could not pick and choose his attorney and informed him that his trial would be conducted with newly appointed counsel on a given date or that Woods would be required to appear pro se. The court ultimately granted another adjournment and on the rescheduled trial date Woods indicated that he did not want his fifth public defender to represent him. Woods was then permitted to represent himself and the court granted the public defender's motion to withdraw but required him to act as standby counsel during trial. *Id.* at 712-14.

There are clearly differences between a voluntary waiver of counsel (based on a defendant's desire to exercise the right of self representation), and a "constructive waiver" or forfeiture of the right to the assistance of counsel (which operates as a matter of law when a court determines that a defendant is manipulating or obstructing the judicial process). The latter, forfeiture, is seldom invoked and generally involves cases in which non-indigent defendants have been informed of their right to retain counsel, given ample time to do so, and yet appear at trial unrepresented,[3] or when a defendant attempts an eleventh hour substitution of counsel.[4] This court has, however, found this to be a drastic solution and cautioned trial courts that, "[w]hen considering actions and conduct which purport to constitute a waiver of this fundamental right, all relevant inquiries into the nature and intent of those actions and conduct must be pursued prior to imposing upon the defendant the consequences of waiver." *Keller*, 75 Wis. 2d at 509.

Both this court and the United States Supreme Court have frequently stressed the special obligations of judicial responsibility that a circuit court faces when dealing with an unrepresented defendant.

'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or

[3] *See, e.g., Commonwealth v. Wentz*, 421 A.2d 796 (Pa. 1980); *United States v. Gates*, 557 F.2d 1086 (5th Cir. 1977), *cert. denied*, 434 U.S. 1017 (1978).

[4] *See, e.g., Mulkovich v. State*, 73 Wis. 2d 464, 243 N.W.2d 198 (1976); *Phifer v. State*, 64 Wis. 2d 24, 218 N.W.2d 354 (1974). *See also* Wayne R. LaFave and Jerold H. Israel, Criminal Procedure, Vol. 2 11.3(c) (1984).

liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand.

*State ex rel. Burnett v. Burke*, 22 Wis. 2d 486, 492, 126 N.W.2d 91 (1964) (quoting *von Moltke v. Gillies*, 332 U.S. 708, 723 (1948)) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938)); *see also Keller*, 75 Wis. 2d at 507.

While this court has recognized the frustration engendered by difficult defendants and repeated delays, we have also noted that in confronting such situations a circuit court must keep in mind the obligation it has to the defendant. *Keller*, 75 Wis. 2d at 506-07.[5] When a court accepts a voluntary waiver of the right to the assistance of counsel, the record must reflect that the court has made the accused aware of the difficulties and disadvantages of self-representation, and that the defendant understands the seriousness of the charges he or she faces and the potential penalties that may be imposed upon a finding of guilt. *See Pickens*, 96 Wis. 2d at 563.

---

[5] *See also* American Bar Association Standards for Criminal Justice § 6-3.6 Commentary (1986 Supplement):

> Whatever the motive behind a defendant's wish to appear pro se, a judge cannot disregard the long-term interest of the accused in having guilt or lack of guilt fairly determined. Except in the most unusual circumstances, a trial in which one side is unrepresented by counsel is a farcical effort to ascertain guilt. . . . [I]t is ultimately the judge's responsibility to see that the merits of a controversy are resolved fairly and justly.

Imposition of forfeiture of this important right requires no less. Similar to the procedures suggested for use by a circuit judge in accepting a waiver of the right to counsel (*see* Wis JI—Criminal SM—30), a circuit court contemplating forfeiture must make sure that a defendant understands the implications of his or her actions. The record should reflect: (1) explicit warnings that, if the defendant persists in "X" [specific conduct], the court will find that the right to counsel has been forfeited and will require the defendant to proceed to trial pro se; (2) a colloquy indicating that the defendant has been made aware of the difficulties and dangers inherent in self-representation; (3) a clear ruling when the court deems the right to counsel to have been forfeited; (4) factual findings to support the court's ruling; and (5) appointment of standby counsel.[6]

A circuit court should only resort to forfeiture in extraordinary circumstances. And even then, the "serious and weighty responsibility" imposed on the circuit court through its "protecting duty" strongly suggests that standby counsel should be appointed. Standby counsel serves not only to safeguard a defendant's constitutionally protected rights but also to advance the

---

[6] Standard 6-3.7 of the American Bar Association Standards for Criminal Justice states: "When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon and to call the judge's attention to matters favorable to the accused upon which the judge should rule on his or her motion." The Commentary to Standard 6-3.7 goes even further by suggesting that, "in all but the simplest trials, and even in those if availability of counsel permits, the court should ordinarily appoint standby counsel to assist the accused . . ."

court's objectives of judicial efficiency by assisting the accused in overcoming routine procedural and evidentiary obstacles. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). For example, standby counsel can assist with problems in introducing evidence, preserve appellate issues by entering timely objections, and help customize jury instructions.

In *Contempt in State v. Lehman*, 137 Wis. 2d 65, 403 N.W.2d 438 (1987), this court held that the circuit court had the inherent authority to appoint private standby counsel at the county's expense when the Public Defender's office declined to furnish further counsel. There, after being provided with five public defenders who were either fired or withdrew, the defendant requested to appear pro se. The circuit court questioned Lehman to make sure his waiver was knowing and intelligent, and granted his request with the caveat that "it would be in the court's interest" to have standby counsel ready to assist so that the "matter could go smoothly." *Lehman*, 137 Wis. 2d at 71.

In *Lehman*, we stated that, "[t]he question of whether an indigent defendant who elects to proceed pro se and who thereby waives his constitutional right to assistance of counsel nevertheless has a constitutional right to 'standby' counsel, if requested, is not presented," and therefore we declined to reach that issue. *Lehman*, 137 Wis. 2d at 76. That question remains open, as does the question of whether constitutional guarantees are violated by a judge's unilateral decision to deny standby counsel to a defendant who, like Newton, has not expressly waived the right to counsel.

The majority characterizes the dissent as implying "that the discretionary decision of the trial court to appoint standby counsel is somehow associated with a

defendant's Sixth Amendment right to counsel." Majority op. at 755-57, n.17. This court has previously stated that the discretionary decision of the circuit court whether to approve or deny a defendant's request to proceed pro se is tied to the "trial-centered" Sixth Amendment which serves to guarantee an accused's right to an effective defense and, overall, to assure a **"fair trial."** *Hamiel v. State,* 92 Wis. 2d 656, 672, 285 N.W.2d 639 (1979). Similarly, the Sixth Amendment's purpose of ensuring a fair trial is certainly associated with a court's decision of whether a defendant shall be forced to stand alone in court contrary to his expressed request for the assistance of counsel. When a court finds it necessary to take the drastic step of imposing forfeiture of the right to counsel upon a recalcitrant defendant, the court must take steps to insure that it has done all that it can to preserve the defendant's right to a fair trial under the Sixth Amendment. A court takes a major step towards ensuring a fair trial and fulfilling its "protecting duty" by appointing standby counsel.

Here, the record reveals:

—no warnings that a continued course of conduct would be considered forfeiture and that Newton would then have to proceed pro se;

—no statement by the court of its conclusion that Newton had forfeited the right to counsel;

—no waiver inquiry or effort to inform Newton of the difficulties of self-representation;

—the defendant continued to insist he wanted counsel;

—the court denied standby counsel, even though the motion to appoint standby counsel was filed by the State;

—Newton was clearly prejudiced by his self-representation to the extent that the court com-

mented from the bench that Newton's defense witnesses were hurting him ("pounding additional nails into his coffin") and that he was incriminating himself by virtue of the questions he asked.[7]

I believe that a violation of Newton's Sixth Amendment rights occurred when he was: required to appear pro se at his trial without prior warning that continued disagreement with counsel would be considered forfeiture, not informed of the difficulties of self-representation, and denied the assistance of standby counsel. Because I conclude that Newton's conviction should be reversed and the case remanded for retrial, I respectfully dissent from that portion of the majority's opinion.

I am authorized to state that Justice SHIRLEY S. ABRAHAMSON and Justice WILLIAM A. BABLITCH join in this opinion.

---

[7] To mention only a few of the mistakes that Newton made in front of the jury: he admitted to other acts which had been severed on the basis of prejudice, he revealed that he was currently in jail, he elicited testimony from his own witness that he had provided money to purchase cocaine and that another witness had purchased cocaine from him.