95 Wis.2d 670 (1980)
291 N.W.2d 631
IN MATTER of a Certain Subpoena Duces Tecum Issued to WISCONSIN FAMILY COUNSELING SERVICES, INC., and Jeffrey Knepler, Movants-Appellants,
v.
STATE of Wisconsin, Plaintiff-Respondent, John Doe and Other Persons Unknown, Defendants.
No. 79-1122.
Court of Appeals of Wisconsin.
Submitted on briefs February 13, 1980.
Decided March 21, 1980.
For the movants-appellants, the cause was submitted on the briefs of John A. Fiorenza and Dominic S. Amato and Fiorenza, Weiss, Amato, Hodan & Belongia, S.C., of Milwaukee.
For the plaintiff-respondent, the cause was submitted on the brief of Bronson C. La Follette, attorney general, with whom on the brief was Fredric E. Matestic, assistant district attorney, Milwaukee County.
Before Decker, C.J., Moser, P.J., and Cannon, J.
*671 DECKER, C.J.
Appellants raise three issues on appeal: (1) must the circuit court make a finding of probable cause or reason to believe that a crime has been committed within the court's jurisdiction before that court becomes vested with subject matter jurisdiction to commence a John Doe proceeding under sec. 968.26, Stats.; (2) must the initiating petition, transcript, or documents used to invoke the circuit court's John Doe jurisdiction under sec. 968.26 be made a part of the court's public record file; and (3) must the "jurisdictional records" utilized by the court to invoke John Doe "jurisdiction" be made a part of the court's public record file. The trial court answered the questions in the negative and we affirm.
On April 11, 1979, the circuit court for Milwaukee county, the Honorable Robert J. Miech, issued a subpoena duces tecum for Jeffrey John Knepler, president of Wisconsin Family Counseling Services, Inc., to produce records and give evidence in a John Doe proceeding on May 2, 1979. Upon Knepler's request, the return date was adjourned to June 11, 1979. On May 1, 1979, Knepler moved to quash the subpoena duces tecum on the ground that the court lacked subject matter jurisdiction. On June 11, 1979, Knepler appeared but refused to answer questions by an assistant district attorney whether he received the subpoena duces tecum and brought the documents listed therein.
At the June 11 hearing, the assistant district attorney informed Knepler that the John Doe investigation was initiated for investigating alleged Medicaid fraud abuses of the Wisconsin Medical Assistance Program and that Knepler was a potential target of the investigation. On June 22, 1979, Judge Miech issued an order to show cause returnable June 29, 1979 why Knepler should not be "punished for contempt for misconduct and willfully refusing to obey the subpoena duces tecum." After the *672 hearing, Knepler's motion to quash was denied. Judge Miech deferred the contempt hearing to enable the appellants to appeal the order denying his motion to quash the subpoena duces tecum.
Appellants, in support of the three stated issues, make two arguments: (1) Subject matter jurisdiction of the circuit court to commence a John Doe proceeding under sec. 968.26, Stats., "requires a finding of probable cause or reason to believe that a crime has been committed within the court's jurisdiction all as a matter of public record;" and (2) "John Doe proceedings are creatures of the statute" and the court's jurisdiction "can only be vested pursuant to said statute as evidence[d] by [a] public record which the circuit court . . . failed to do in the case at bar."
The first argument is supported solely by the contention that appellants and the public have a common law right to inspect public records, "including judicial records and documents showing the invocation of a court's jurisdiction to proceed." The second argument is supported by the statement that: (a) section 968.26, Stats., mandates that John Doe proceedings cannot be commenced to vest the circuit court with subject matter jurisdiction until there is a finding of probable cause or reason to believe that a crime is being committed within the court's jurisdiction; and (b) by case law requiring proof of jurisdiction of a court if challenged.
In making these arguments, appellants have misplaced their reliance upon state and federal cases that implement "the public's right to know" the contents of public records and the authority of the legal system to discharge its constitutional responsibility. Appellants overlook the balancing tests that are inherent in those concepts.
Wisconsin courts have more effectively enforced the public records statute, sec. 19.21, than federal courts *673 have enforced the federal Freedom of Information Act.[1] Unquestionably, the lesser effectiveness of the federal courts is due in part to the consignment by Congress of nine categories of information to the exemption discretion of federal agencies.[2] However, the public's right to know has never been interpreted to provide such unlimited access to public records that the state is unable to effectively prosecute and punish criminals and protect society from criminal ravaging. Our supreme court has recognized that the public's right to know may sometimes require deference to the investigation and prosecution of crime[3] and our Wisconsin Rules of Evidence specifically *674 grant a privilege to refuse to disclose investigating files, reports, and returns for law enforcement purposes.
Appellants' attempt to rely on federal or state cases that override an otherwise valid testimonial privilege in order to fulfill the capability of the legal system to discharge its constitutionally-appointed tasks is similarly misplaced. We do not deal here with the rights of the prosecution or defense in a criminal prosecution, nor the rights of citizens to acquire unprivileged public records. This proceeding is nothing more than investigatory and utilizes the inherent, constitutional, and statutory authority of the legal system to compel testimony. Sec. 905.01, Stats.
Knepler has no privilege to refuse to testify, refuse to disclose any matter, or refuse to produce any real evidence except as specific statutes, decisional case law interpreting supreme court rules, or the constitutions of Wisconsin and the United States provide. Sec. 905.01, Stats.
Knepler and Wisconsin Family Counseling Services, Inc., may be a potential target of the John Doe proceeding and may ultimately be charged with a crime. However, at this time Knepler is merely a witness in an investigatory proceeding. The only purpose of informing him that he and the company of which he is president may be a target of the investigation is "fair play" so that he may knowingly determine whether he should exercise *675 his constitutional testimonial privileges to refuse to testify to matters which may tend to incriminate him.
Appellants' statement that sec. 968.26, Stats., mandates that John Doe proceedings cannot be commenced until a finding of probable cause is untenable. There is no such requirement in the statute, nor does appellant cite any cases construing it in this manner. To the contrary, the statute prescribes that determination of probable cause is to be made after subpoena and examination of the witnesses. "If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint shall be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused."[4] Prior to the issuance of a complaint, the proceeding is simply investigatory.
Our supreme court has stated that "[t]he John Doe complaint . . . need not name a particular accused; nor need it set forth facts sufficient to show that a crime has probably been committed."[5] "It is within the discretion of the judge to determine whether such proceedings shall be instituted, and he also has the discretion to determine the scope and extent of the inquiry."[6]
To initiate a John Doe proceeding, a complaint is made to a judge, not the circuit court. The judge may exercise his authority to administer an oath, sec. 887.01(1), Stats., and to issue a subpoena, sec. 885.01. The authority to issue a subpoena and administer an oath is not dependent upon the judge discharging the function of a court. He is a judge at chambers with the powers inherent in his judicial office but not dependent upon the *676 jurisdiction necessary if he functions as a court.[7] To the contrary, he functions as a one-man grand jury  an investigatory body that antedates the constitutions of the United States and state of Wisconsin where its investigatory functions, ancillary to its historical authority to return criminal indictments, is preserved. Wis. Const. art. I, §7; U.S. Const. amend. V.
To adopt appellants' position would deprive the proceeding of its function. "It is the purpose of the John Doe proceeding to ascertain whether the crime has been committed and by whom . . . ."[8]
The complaint initiating the John Doe proceeding need not be part of the court's public record. Section 968.26, *677 Stats., states the general rule that "the record of [a John Doe] proceeding and the testimony taken shall not be open to inspection."[9]
Appellants would have us differentiate what they describe as the "jurisdictional documents" from evidence accumulated in the actual course of the John Doe proceeding. Such a distinction is unwarranted because the reasons requiring secrecy as to witnesses and their testimony also require secrecy as to the complainant and his or her information.
Reasons justifying secrecy include:
(1) keeping a John Doe target from fleeing, or an arrested defendant from knowledge which might cause him to flee;
(2) preventing defendants from collecting perjured testimony for the trial;
(3) preventing those interested in thwarting the inquiry and tampering with prospective testimony or secreting evidence;
(4) freeing witnesses from the threat of immediate retaliation; and
(5) preventing testimony which may be mistaken or untrue or irrelevant from becoming public.[10]
The complainants are just as vulnerable to tampering and pressure as the other witnesses testifying in the proceeding. Information from complainants is just as likely to be used for improper purposes as that of other witnesses testifying at John Doe hearings.
A statutory mandate of secrecy eliminates the judicial balancing of the public's right to know vis-a-vis the need for nondisclosure required by the court in cases where *678 right of inspection of public documents is at issue.[11] The legislature has made that balancing choice and decided in favor of secrecy.
In punishing a witness for contempt for an unprivileged refusal to respond to a subpoena duces tecum, the John Doe complaint or petition and the supporting documents are irrelevant to the basic inquiry with respect to the justification for refusal to testify or produce documents.
By the Court.  Order affirmed.
NOTES
[1] Although FOIA was intended to be a full disclosure statute, there is no question that it has been less than uniformly successful. Indeed, some commentators have suggested that the FOIA has not really caused any significant increase in the disclosure of useful and important information. There is an inertia in a bureaucracy which tends to support a policy of nondisclosure rather than the opposite, and the cost of pursuing an FOIA suit (or any federal litigation) can be so high that all but wealthy firms and zealots are discouraged from litigation. It does, however, provide a mechanism and a basis from which to proceed in seeking to obtain information from the government. If one is persistent enough to pursue litigation, the government is put in the position of having to justify nondisclosure. Judicial interpretation of ambiguous provisions have, however, often tended to favor nondisclosure. With some exceptions the courts have paid lip service to the general policy of disclosure and have proceeded to apply the statute in ways that have left open a number of very large loopholes which can be used to prevent access to significant categories of data.

Singleton and Hunter, Statutory and Judicial Responses To The Problem of Access To Government Information, 1979 Det. Coll. L. Rev. 51, 70-71. For a general discussion of developments under the FOIA, see notes in 1979 Duke L.J. 327; 1978 Duke L.J. 189; 1977 Duke L.J. 532; 1976 Duke L.J. 366; 1975 Duke L.J. 416; 1974 Duke L.J. 251; 1973 Duke L.J. 178.
[2] 5 U.S.C. §552(b) (1)-(9) (1976).
[3] Independent of sec. 968.26 or other statute, the supreme court early held that "one accused of crime enjoys no right to an inspection of the evidence relied upon by the public authorities for his conviction." State v. Herman, 219 Wis. 267, 274, 262 N.W. 718, 722 (1935), citing Steensland v. Hoppmann, 213 Wis. 593, 599, 252 N.W. 146, 148 (1934); State ex rel. Schroeder v. Page, 206 Wis. 611, 615, 240 N.W. 173, 174 (1932); and State ex rel. Spencer v. Freedy, 198 Wis. 388, 392, 223 N.W. 861, 862 (1929). For the theory of making investigatory records not open to the public, see also Thayer, Legal Control of the Press (3rd ed. 1956), pp. 174-75; 1945 Wis. L. Rev 239, 244-45; 8 Wigmore, Evidence (McNaughton rev. 1961), §§2374-76, pp. 761-80.
[4] Sec. 968.26, Stats.
[5] State v. Washington, 83 Wis.2d 808, 822, 266 N.W.2d 597, 604 (1978).
[6] State v. Doe, 78 Wis.2d 161, 165, 254 N.W.2d 210, 212 (1977).
[7] The Wisconsin Supreme Court has referred to the judge's "jurisdiction" to conduct a John Doe investigation. See Wolke v. Fleming, 24 Wis.2d 606, 613, 129 N.W.2d 841, 845 (1964), cert. denied, 380 U.S. 912 (1965); Washington, supra note 5 at 820, 266 N.W.2d at 603. Jurisdiction is "the legal right by which judges exercise their authority." Black's Law Dictionary (rev. 4th ed. 1968). "[A] court must possess both personal and subject matter jurisdiction over a defendant in order to try and convict him for crime." Zalenka v. State, 83 Wis.2d 601, 615, 266 N.W.2d 279, 285 (1978). [Footnote omitted.] When used in the context of a John Doe proceeding, however, the word "jurisdiction" can only be meant to identify the authority of the judge to investigate pursuant to sec. 968.26, Stats., as distinguished from the authority to try, convict and penalize assumed by a court with proper personal and subject matter jurisdiction over which a judge presides. "The law ordinarily makes a clear distinction between the magistrate and a court," a distinction which exists "even where the person who acts in the capacity of magistrate is also the judge of a court of record." State ex rel. Jackson v. Coffey, 18 Wis.2d 529, 534-35, 118 N.W.2d 939, 943 (1963) (where the supreme court held that a magistrate conducting a John Doe hearing cannot compel self-incriminating testimony pursuant to a statute conferring the power to compel testimony by order of a "court.") See also State v. Koopman, 34 Wis.2d 204, 207, 148 N.W.2d 671, 673 (1967); State ex rel. White v. District Court, 262 Wis. 139, 145, 54 N.W.2d 189, 192 (1952); and State v. Friedl, 259 Wis. 110, 114, 47 N.W.2d 306, 308 (1951).
[8] Wolke, supra note 7 at 613, 129 N.W.2d 845.
[9] Sec. 968.28, Stats.
[10] State v. O'Connor, 77 Wis.2d 261, 279, 252 N.W.2d 671, 678 (1977). See also State ex rel. Jackson v. Coffey, supra note 7 at 546, 118 N.W.2d at 949; State ex rel. Distenfeld v. Neelen, 255 Wis. 214, 218, 38 N.W.2d 703, 704 (1949).
[11] State ex rel. Youmans v. Owens, 28 Wis.2d 672, 681, 137 N.W.2d 470, 474 (1965), reh. denied, 28 Wis.2d 685a, 139 N.W.2d 241 (1966).