SHIRLEY S. ABRAHAMSON, J.
¶ 35. (dissenting). Our "Sunshine Law," Wisconsin's public records law, is a core principle of democracy: "[T]he people must be informed about the inner workings of their government and . . . openness in government is essential to maintain the strength of our democratic society."[1]
¶ 36. The majority opinion eclipses the "Sunshine Law." It dims the lights on persons seeking information about Wisconsin government operations and—in the instant case—shuts the lights off on two records that show how district attorneys, charged with prosecuting all criminal actions within their prosecu-torial units,[2] fulfill their duties.
¶ 37. The majority opinion completely bars release of then-Waukesha County District Attorney Brad Schimel's video presentations at two different educational conferences.[3]
*489 ¶ 38. The Department of Justice performs more than one task regarding the public records law. The legislature imposes duties on the Department of Justice regarding the public records law. The legislature established that "[a]ny person may request advice from the attorney general as to the applicability of [the public records law] under any circumstances," and the "attorney general may respond to" the request. Wis. Stat. § 19.39.[4] In the instant case, an employee of the *490 Department of Justice is the custodian of the records requested and has refused to grant the request for release of the two videos at issue. The Department of Justice is also a defendant in the instant case. When the original request was made, Brad Schimel was the Waukesha County District Attorney, and was represented by the Department of Justice. Now, Brad Schimel is the Attorney General, head of the Department of Justice, and is represented by the Department of Justice.
¶ 39. I too wear more than one hat. I view the public records law from three vantage points. I have participated in numerous cases as a member of this court ruling on the interpretation and application of the public records law. These cases are precedent that binds us all. In my capacity as an elected official and custodian of records, I have been the recipient of numerous open records requests, to which I have responded by complying with the public records law (although the court has never ruled on whether the public records law is applicable to it). I am also a requester. I have made numerous requests for court records (that is, records under the public law, especially those relating to the court system's fiscal status), to the Interim Director of State Courts, an employee of the supreme court, to which he has refused to respond. I have not sought a writ of mandamus. I have not requested the Attorney General or the Dane County District Attorney to bring an action for a writ of mandamus pursuant to Wis. Stat. § 19.37(1).
*491 ¶ 40. I write this dissent guided by these three viewing platforms—-justice, records custodian, and requester.
¶ 41. The majority opinion follows the approach that the Department of Justice has been taking: Prevent release of the videos in their entirety. Do not adopt a redact and release approach.[5]
¶ 42. In this court, the Department of Justice again seeks to bar release of the two videos in their entirety. I agree with the circuit court and court of appeals that the Department of Justice has not provided evidence to support the nondisclosure of the videos. Instead, the Department of Justice relies on speculation, conjecture, and fear.
¶ 43. The Department of Justice has presented no evidence that the two videos reveal any investigation and prosecution practices not already known or knowable in the public sphere. The Department of Justice has presented no evidence that information in the videos would hinder the state's ability to prosecute sex offenders. The Department of Justice has presented no evidence that the videos disclose personally identifiable information about the crime victims.
¶ 44. As an alternative to releasing the videos in their entirety, for the first time the Department of Justice asks a court to view the videos for redaction.
¶ 45. I would remand the cause to the circuit court to conduct proceedings to determine whether any part of the two videos should be redacted and the remainder released in compliance with the public records law.
*492 ¶ 46. I dissent because the majority opinion casts a long shadow on several principles of Wisconsin's public records law.
¶ 47. I state the principles that the majority opinion either ignores or jeopardizes, and then I discuss several of these principles more fully in addressing whether each video in the instant case should be released in whole or in part.
¶ 48. Principle: A "presumption of public access" governs every open records request. Wis. Stat. § 19.31.
¶ 49. Principle: The Wisconsin Legislature has provided few exceptions to disclosing records. Wis. Stat. §§ 19.35-36. A court is to "narrowly construe any exceptions to the general rule of disclosure."[6]
¶ 50. Principle: A court should not consider the identity of the requester or the requester's motive.[7] Wisconsin Stat. § 19.35(l)(i) provides in relevant part:
Except as authorized under this paragraph, no request under pars, (a) and (b) to (f) may be refused because the person making the request is unwilling to be identified or to state the purpose of the request.[8]
*493 f 51. The majority opinion speculates that there is a "partisan purpose" to these requests. Majority op., ¶ 23. This court should not superimpose its own theories of the requester's motives onto the requester. This court should be a force for lawfulness. This court should separate and distance itself from partisan politics.
¶ 52. A corollary of the majority opinion's view of the requester's motive is that the opinion rests on the idea that the requester agrees that the videos do not show any misconduct on the part of then District Attorney Schimel. Majority op., ¶ 22. The majority opinion further asserts that the requester agrees that the recordings do not contain any offensive comments. Majority op., ¶ 23. No such agreement about offensive comments appears in the record. Offensive comments, if any, are not an issue before this court.
¶ 53. Without any citation to Wisconsin's (or another jurisdiction's) statutes or case law, the majority opinion essentially states that because the videos show no misconduct or offensive comments, the public is not harmed by the non-disclosure. This proposition is not in keeping with Wisconsin's commitment to open government to enable the public to monitor and evaluate how government officials discharge their responsibilities.
¶ 54. Principle: Wisconsin Stat. § 19.36(6) requires a records custodian to disclose that part of a record that is subject to disclosure and redact (delete) *494 information that is not subject to disclosure.[9] If the record is in an incomprehensible form or in a form that cannot be redacted without revealing nondisclosable information, a transcript of the record may be made and information redacted from the transcript. Wis. Stat. § 19.35(l)(e), (em).
¶ 55. Wisconsin Stat. § 19.36(6) provides for redaction as follows:
(6) SEPARATION OF INFORMATION. If a record contains information that is subject to disclosure under s. 19.35(l)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.[10]
¶ 56. The majority opinion refers to this provision, the text of which governs the instant case. Majority op., f 24 n.10. Rather than addressing this statutory provision directly, the majority opinion relegates the issue of redaction to a footnote and refers to cases from other jurisdictions that are inapposite and unpersuasive. Majority op., f 24 n.10.
*495 f 57. The majority opinion's refusal to adhere to Wis. Stat. § 19.36(6) contravenes the basic policy of the public records law: Disclosure is presumed and exceptions are narrowly construed. I shall discuss the issue of redaction further. See ¶¶ 80-96, infra.
¶ 58. Principle: The records custodian is obliged to state specific and sufficient reasons for refusing to release the record at issue.[11] If the custodian gives no reason or an insufficient reason, a writ of mandamus compelling the production of records may issue. In the instant case, I examine both the custodian's response and the Department of Justice's briefs filed in this court for specific and sufficient reasons for refusing to release the videos in their entirety.
¶ 59. Principle: "The process of police investigation is one where public oversight is important. . . and [is] generally [a] matterQ of public interest. . . ."[12]
¶ 60. Principle: "The United States Freedom of Information Act (FOIA), 5 U.S.C. § 552, does not apply to states."[13] The Department of Justice's 2015 Wisconsin Public Records Law Compliance Guide states that *496 this court has declared that although "the public policies expressed in FOIA may be relevant to application of the common law balancing test. . . [generally, the Wisconsin Public Records Law provides for greater access to state governmental records than FOIA does to federal records."[14]
¶ 61. The majority opinion does not sufficiently caution that FOIA does not govern Wisconsin's public records law.
f 62. These principles inform my dissent.
¶ 63. Today, the majority opinion significantly dims the lights on transparency in government and shuts off some lights by concluding that the Department of Justice may withhold both of the videos in their entirety.
¶ 64. Because each video presents some different issues, I first address whether the 2009 video of then District Attorney Schimel's educational presentation should be released in whole or in part. I then examine whether the 2013 video of then-District Attorney Schimel's educational presentation should be released in whole or in part.
I. The 2009 Video
¶ 65. The majority opinion rests on three grounds:
(A) It applies the common-law balancing test to determine whether the public interest in nondisclosure of the 2009 video outweighs the public interest in disclosure. Majority op., ¶ 16.
(B) It relies on the federal Freedom of Information Act (FOIA). Majority op., ¶ 13.
*497 (C) It bars release of the 2009 video in its entirety, and refuses to consider redaction of any part of the video. Majority op., ¶ 24 n.10.
A
¶ 66. In barring release of the entire 2009 video, the majority opinion balances the presumption of and public interest in openness against the public interest in nondisclosure.
f 67. The public interest in the government's investigating and prosecuting criminal activity is "strong." Majority op., ¶ 13. The majority opinion considers the strong public interest in disclosing information about government operations to catch sexual predators who prey on children and to educate parents about sexual predators of children and their use of the internet.
¶ 68. In the instant case, the alleged countervailing public interest is that a record should not be disclosed when the record gives criminals information regarding law enforcement techniques and procedures in Waukesha County and Wisconsin that they could use to circumvent the law. Majority op., ¶¶ 16, 18.
f 69. The Department of Justice has the burden to show that the presumption of openness and the public interests favoring disclosure are outweighed by the public interests favoring secrecy. Majority op., f 9.
¶ 70. The majority opinion supports its conclusion that the Department of Justice has met its burden with several arguments.
¶ 71. Several times it notes that the presentation on the video was given at a confidential training session for prosecutors and victims' right advocates, *498 with some police representatives present.[15] Majority op., ¶ 18. Despite the Department of Justice's assertion that these seminars are confidential and closed to persons not associated with prosecution and law enforcement, attendees at the presentation were not informed in the video or distributed materials that they were bound to secrecy.[16]
¶ 72. As Judge Niess colorfully and correctly stated: The video really is "Investigating Child Predators 101."[17] The circuit court explicitly found *499 that the videos repeat information that has been made public in several venues. Indeed, the internet is replete with readily available information substantially similar to that in the videos.[18]
*500 ¶ 73. That information in the 2009 videos at issue is publicly known or publicly available weighs in favor of release. Linzmeyer v. Forcey, 2002 WI 84, ¶ 37, 254 Wis. 2d 306, 330, 646 N.W.2d 811, 821. The majority opinion pays lip service to this principle but does not apply it to the instant case. See majority op., ¶ 21.
¶ 74. After looking at the video and examining public sources of information about law enforcement techniques in capturing sexual predators of children using the internet, I conclude, as did the circuit court and court of appeals, that the Department of Justice has not demonstrated that the contents of the 2009 video are not publicly known or that the contents of the 2009 video reveal any information that is peculiar to Waukesha County or Wisconsin prosecutions.
¶ 75. Neither the Department of Justice nor the majority opinion offers an illustration (even a guarded one) of any local law enforcement technique that is distinctively used in Waukesha County or the state or explains how the release of the 2009 video would enable a criminal to circumvent Wisconsin law. The whole discussion that releasing the 2009 video would create a significant risk is ipse dixit; that is, there is a significant public risk to effective law enforcement only because the Department of Justice and the majority opinion say so. Majority op., ¶¶ 19, 20.
¶ 76. The law enforcement interest that the Department of Justice and the majority opinion identify (but do not demonstrate) does not overcome the statutory presumption of openness in the instant case. In any event, the majority opinion should not be read as adopting a per se rule that any time a requested record implicates any law enforcement technique or prosecu-torial strategy, the record will be withheld from public view. Indeed, the Department of Justice's brief ex *501 plains that it is not asking for any sort of blanket exception. Rather, the Department of Justice's position is that law enforcement training records must be analyzed on a case-by-case basis.[19]
B
¶ 77. I turn now to the Department of Justice and majority opinion's reliance on the federal Freedom of Information Act (FOIA) and the Linzmeyer decision to support their conclusion. Majority op., ¶¶ 13, 18. This reliance is misplaced.
¶ 78. Wisconsin's public records law provides for greater access to records than FOIA provides. "Wisconsin courts have more effectively enforced the public records statute... than federal courts have enforced the federal Freedom of Information Act." Wis. Family Counseling Servs., Inc. v. State, 95 Wis. 2d 670, 672-73, 291 N.W.2d 631 (Wis. App. 1980) (also noting that the language in Wisconsin's public records law provides for greater access than FOIA, citing Constance Y. Singleton & Howard O. Hunter, Statutory and Judicial Responses to the Problem of Access to Government Information, 1979 Det. Coll. L. Rev. 51, 70-71).
¶ 79. FOIA is not binding on Wisconsin records custodians or courts, and it does not lower the bar on when law enforcement records may be withheld in Wisconsin. Although FOIA may assist in determining "whether the presumption of openness in law enforcement records is overcome by another public policy,"[20] its use is limited.
*502 c
¶ 80. Without reference to any Wisconsin case law directing a records custodian to redact any information that should not be disclosed, the majority opinion declares that the entire video is barred from public view. The majority opinion relegates the subject of redaction to a footnote.
¶ 81. The majority opinion baldly asserts that redaction is not an option because the records at issue are videos, rather than text documents, and cannot be redacted. Majority op., f 24 n.10. Nothing in the record reveals whether this assertion is true. If it is true, a transcript can be prepared and redactions shown. Wis. Stat. § 19.35(l)(em). It appears, however, that videos can be redacted.[21]
f 82. The majority opinion also states, without any support, that releasing the 2009 video with redac-tions would present a video that would be "meaningless."
¶ 83. The majority opinion does not attempt to clarify what it means by "meaningless." It does, however, cite to an Illinois appellate court decision. Majority op., f 24 n.10. The Illinois court concluded that a redacted document would be meaningless when "the result of the redaction was a document consisting of blank pages, along with meaningless pronouns and articles [sic] such as the words 'and,' 'or,' 'but,' etc." Harwood v. McDonough, 799 N.E.2d 859, 866 (Ill. App. 2003).
*503 ¶ 84. In the instant case, redactions would not result in a meaningless document as defined by the Illinois court. We know because the Department of Justice tells us so. A records custodian seeking to withhold a record may satisfy its burden by searching the record and giving a reasonably detailed explanation for refusing to release all or part of the record. "If a custodian denies a public records request, he or she must give specific reasons for denying access, and it is the role of the court to determine whether the reasons are sufficient." Majority op., ¶ 9.
¶ 85. In fulfilling its obligation to give specific and sufficient reasons for refusing to turn over the 2009 video in its entirety, the Department of Justice cites in its opening and reply briefs portions of the 2009 video that the Department of Justice contends should not be disclosed. It cites to comments in the 2009 video about undercover strategies, helpful types of evidence, Department of Justice litigation defenses, technology and creation of files, and examples from sensitive cases.[22]
¶ 86. These specific portions of the 2009 video cited by the Department of Justice, should I even agree that they should be redacted (and I do not), run about 30 minutes. The entire 2009 video runs about 74 minutes.[23] Thus, over half of the video presentation apparently would be available for the public.
¶ 87. Simple arithmetic undercuts the majority opinion's assertion that the videos would be meaningless if redacted. Furthermore, my in camera view of *504 the video contravenes the majority opinion's unsupported assertion, majority op., ¶ 24 n.10, that "the nondisclosable content on the videos permeates the recordings, making redaction futile."
¶ 88. The Department of Justice has not demonstrated that the 2009 video is permeated with information that must be redacted under its view of the public records law and that redaction would render the video meaningless.
¶ 89. Addressing redaction, the majority opinion does not rely on the Wisconsin redaction statute, Wis. Stat. § 19.36(6), or Wisconsin precedent. Indeed, the majority opinion relies only on distinguishable out-of-state cases. See majority op., f 24 n.10.
¶ 90. The majority opinion's reliance, for example, on John C. v. Martha A., 592 N.Y.S.2d 229 (N.Y. Civ. Ct. 1992), is misplaced. John C. involved a New York City Municipal Court landlord-tenant dispute and was not an open records case. The landlord's counsel provided the court information about the medical condition of the tenant's husband; the confidential medical information was obtained illegally and permeated the whole court file. John C., 592 N.Y.S.2d at 235.
¶ 91. In Kestenbaum v. Michigan State University, 327 N.W.2d 783, 788 n.10 (Mich. 1982), without discussion or explanation, the Michigan court stated that a computer tape should not be released because redaction would render the tape "useless" to the requester. The majority opinion in the instant case extracts this language from the Michigan case that appears to support the majority opinion's view without comparing the Michigan and Wisconsin public records laws and without analyzing the meaning of "useless" and whether redaction makes the 2009 video "useless" in the instant case.
*505 ¶ 92. In contrast, in State ex rel. Pietrangelo v. City of Avon Lake, 55 N.E.3d 1091, ¶ 35 (Ohio 2016), the Ohio supreme court noted that a redacted document must be released even if "meaningless": Ohio (like Wisconsin) has no law allowing a public official to refuse to release a redacted document even if it is "meaningless" or "useless."
¶ 93. The majority opinion also relies on a federal Second Circuit Court of Appeals case, American Civil Liberties Union v. Department of Defense, 543 F.3d 59 (2nd Cir. 2008), for the proposition that a redacted record need not be released if the redactions render it meaningless. This case provides little, if any, support for the majority opinion.
¶ 94. Using FOIA, the American Civil Liberties Union attempted to obtain photographs of detainees held by government forces abroad depicting prisoner abuse by these forces. The defendant government entities justified nondisclosure under 5 U.S.C. § 552(b)(6) and (7)(C).
¶ 95. FOIA provides for redaction. See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").
f 96. Both the federal district court and federal court of appeals ordered redacted photographs released in American Civil Liberties Union.[24] The courts discussed redaction, but most photographs were released without redaction. The Second Circuit court noted that "[w]here individual recognition could not be *506 prevented without redaction so extensive as to render the images meaningless" the district court properly withheld those photos, but the Second Circuit court agreed with the district court's dismissal of "speculative D risk[s] that persons depicted in the photographs might recognize themselves or be recognized by members of the public in spite of the redactions." Am. Civil Liberties Union, 543 F.3d at 84. No further discussion of redaction ensued.[25] Unlike the Second Circuit court's opinion in the American Civil Liberties Union case, our court's majority opinion refusing to redact and barring disclosure is based on speculative risks.
¶ 97. In sum, in applying its amalgamation of public records law to prohibit release of the 2009 video in its entirety, the majority opinion (like the Department of Justice) dismisses valid public policy concerns while embracing hollow talk lauding the secrecy of publicly known prosecutorial strategy and police techniques.
II. The 2013 Video
¶ 98. The 2013 video is a recording of a presentation that then Waukesha County District Attorney Schimel gave to share the knowledge he gleaned during the prosecution of Anthony Stand, a high-profile sex extortion case. The presentation is essentially a "war story" depicting how the District Attorney *507 handled the case, including the background of the case, the investigation, the charging decisions, the impact on victims, and more. Majority op., ¶ 25. This story has already been publicly divulged by then-District Attorney Schimel and was reported widely in Wisconsin and across the country.[26]
¶ 99. The majority opinion focuses its discussion justifying withholding the 2013 video in its entirety on two grounds:
(A) A common-law exception for prosecutors' case files, as described in State ex rel. Richards v. Foust, 165 Wis. 2d 429, 477 N.W.2d 608 (1991). Majority op., ¶ 27.
(B) Victims' rights, as set forth in Article I, Section 9m of the Wisconsin Constitution and Wis. Stat. §§ 950.04(1v)(ag),[27] .055.[28] Majority op., ¶ 14.
*508 A
¶ 100. The majority opinion characterizes the 2013 video as an "oral equivalent" of the district attorney's prosecutorial files and reads the Foust case as not subjecting the district attorney's closed files to the public records law "based on the broad discretion a district attorney has in charging, the confidential nature of the contents of a file, and the threat disclosure poses to the orderly administration of justice." Majority op., ¶ 26 (citing Foust, 165 Wis. 2d at 433-35).
¶ 101. This extension of Foust's common-law exception to the public records law to the instant case overlooks the factors that drove the Foust decision: protecting confidential informants' identities and protecting prosecutors' discretion. Foust, 165 Wis. 2d 429, 435-37. The Department of Justice has not demonstrated that either of these factors is present in the instant case.
¶ 102. Foust did not enshrine the entire prosecu-torial file beyond the public's view. This court has recognized that not all documents in a prosecutor's file are subject to the common-law exception to disclosure. See Nichols v. Bennett, 199 Wis. 2d 268, 544 N.W.2d 428 (1996) (the document's nature and not its location determines its status under the public records law). "[D]ocuments integral to the criminal investigation and prosecution process are protected 'from being open to public inspection.'" Nichols, 199 Wis. 2d at 275 n.4 (quoting Foust, 165 Wis. 2d at 434).
¶ 103. The Department of Justice has not shown that the content of the 2013 video is integral to the closed case or to future open criminal investigations, especially in light of the publicity surrounding Stand's case.
*509 ¶ 104. The Department of Justice's brief, citing Linzmeyer, 254 Wis. 2d 306, ¶ 26, acknowledges that balancing the public policies for and against release requires "special care."[29] Yet the Department of Justice does not take and has not taken "special care." The Department of Justice acknowledges that the records custodian must demonstrate how the release of the requested information will create a risk of "circumvention" of the law.[30] The Department of Justice does not do so, and neither does the majority opinion.
¶ 105. My objection to extending Foust to the instant case does not elevate form (files vs. oral presentation) over substance (content of the video). Rather, the majority opinion's extension of Foust violates the essence of the Foust decision and contravenes the express legislative mandate that exceptions to open records be construed narrowly. See Nichols, 199 Wis. 2d at 273; Fox v. Bock, 149 Wis. 2d 403, 411, 438 N.W.2d 589 (1989).
B
¶ 106. Protection of crime victims is an important consideration in the instant case under the Wisconsin constitution, statutes, and case law. There is no disagreement on this point.
¶ 107. In performing the balancing test to justify nondisclosure of the 2013 video on grounds of protecting crime victims, the majority opinion (like the Department of Justice) views the protection of crime victims as outweighing the presumption of openness of public records in the instant case.
*510 ¶ 108. As he was trying this case, the then-District Attorney wanted to get the information he learned in prosecuting the Stand case to kids and parents.[31] The circuit court agreed that the information could be useful for parents. The majority opinion, in contrast, justifies not releasing the videos by stating that many other useful resources exist for parents. See majority op., ¶ 31.
¶ 109. The majority opinion accepts the Department of Justice's view of the balancing. But the Department of Justice and the majority opinion ignore the comments of the Attorney General, a key figure in the administration of the public records law, with regard to the relationship of the public records law and the laws on protecting crime victims.
f 110. The then-Attorney General explained in 2012 that neither the constitutional provisions nor the Wisconsin statutes relating to crime victims factor into the open records balancing test any more than other factors.[32]
*511 ¶ 111. In April 2012, then-Attorney General J.B. Van Hollen advised interested parties about the relation of the public records law and the victim rights legislation as follows:
The new statutory provisions created by Act 283 [relating to victim rights] do not prohibit law enforcement agencies or other public entities from disclosing personal identifiers of crime victims and witnesses in response to public records requests.. ..
Privacy, confidentiality, and safety concerns related to victims and witnesses have been and should continue to be carefully considered by records custodians when making public records release decisions, however. These important concerns generally are addressed in case-by-case application of the public records balancing test which, under appropriate circumstances, allows sensitive information to be redacted or withheld.
The Wisconsin Department of Justice, echoing Wis. Stat. § 950.04(lv)(ag), (see ¶ 99 n.27, supra), quoted and reaffirmed Attorney General Van Hollen's view in Wisconsin Public Records Compliance Guide at 39 (Nov. 2015).[33]
*512 ¶ 112. Regarding crime victims, the majority opinion does not hold the Department of Justice to the principle that the records custodian must state specific and sufficient reasons for nondisclosure and that a court must determine whether the reasons given are sufficient. Majority op., ¶¶ 28-33. The majority opinion departs from this precedential requirement without reason.
f 113. No victims are identified in the video. Both the circuit court and the Assistant Attorney General representing the Department of Justice agreed that nothing in the video suggests who the victims were. To support its conclusion that release of the 2013 video has the potential for re-victimizing crime victims and imposes too high a cost on crime victims in the instant case, the Department of Justice and the majority opinion rely on Jill J. Karofsky's affidavit. Jill Karofsky is Executive Director of the Office of Crime Victim Services in the Department of Justice.
¶ 114. Director Karofsky is very knowledgeable about victims. Her affidavit, however, makes generalized statements about crime victims without addressing the 2013 video and without taking a position on whether the video at issue should be disclosed.
¶ 115. For example, Director Karofsky's affidavit fails to consider the number of victims in the Stand case, the extensive publicity that the case received, the years that have elapsed since the incident, whether any of the 39 victims could be identified in the video, and the difficulty or ease of identifying the victims by examining past publicity of the case.[34]
*513 ¶ 116. The Department of Justice's reply brief states: "It is the Department as a whole—not Karofsky—that concluded that these generally applicable considerations militate against disclosure of these particular videos."[35] Instead of complying with the requirement of specificity, the Department of Justice's brief asks this court to give deference to the Department when it is protecting crime victims.
¶ 117. The Department of Justice has not fulfilled its burden to show that the public interests favoring disclosure are outweighed by the public interests favoring secrecy in the instant case justifying barring release of the 2013 video in its entirety. See majority op., ¶ 9.
f 118. The entire 2013 video runs a little over 70 minutes. The 2013 video, like the 2009 video, should be reviewed on remand by the circuit court to determine which parts of the 2013 video, if any, should be redacted.[36]
¶ 119. By concluding that the protection of crime victims in the instant case overcomes the legislatively created presumption of openness, the majority opinion offers no workable limits on when protection of crime victims will or will not outweigh the presumption of openness. When a victim of a crime is not identified but is implicated in the record, what is the weight of the thumb on the scale for nondisclosure? Does the majority opinion intend to promulgate a per se rule that *514 protection of crime victims who are not identified but may be implicated always defeats the presumption of openness of records? I think not.
¶ 120. I would remand the cause to the circuit court to conduct proceedings to determine whether any part of the 2013 video should be redacted, and what part of the video should be released in compliance with the public records law.
* ⅜ * *
¶ 121. I write separately because the majority opinion fails to follow principles and procedures the legislature and courts have set forth and because it reaches the wrong result. Along the way to reach its result, the majority opinion extends exceptions to the public records law and, in effect, renders meaningless the statutory direction to redact.
f 122. Because the majority opinion cannot point to a basis for prohibiting redaction in the instant case, I would remand the cause to the circuit court to redact any information justified under the public records law and release the rest of the videos.
¶ 123. The question for me is: What has the majority achieved with its opinion grounded in speculative, abstract, and unsubstantiated fears? The answer for me is: A dimming of the light on public oversight of government, especially in matters pertaining to criminal justice.
¶ 124. For the reasons set forth, I write separately.
f 125. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 Linzmeyer v. Forcey, 2002 WI 84, ¶ 15, 254 Wis. 2d 306, 646 N.W.2d 811. See also Wis. Stat. § 19.31 ("[A]ll persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them.").

 Wis. Stat. § 978.05.

 Then-District Attorney Schimel's video presentations about former cases in his office raise an issue not discussed by the parties.
Supreme Court Rule 20:1.9(c), as it stands now, imposes on lawyers a duty of confidentiality to former clients. It is arguable that lawyers can publicly discuss former cases only with the informed consent of the client.
*489 On July 21, 2016, this court denied Rule Petition 15-04, In the matter of the Petition to Modify SCR 20:1.9(c), which addressed a lawyer's duties to former clients. The petition proposed an amendment enabling an attorney to discuss a closed case at an educational seminar. For a discussion of the rule and the proposed amendment by the amendment's author, see Michael D. Cicchini, On the Absurdity of Model Rule 1.9,40 Vt. L. Rev. 69 (2015).
The question whether a prosecutor may discuss a closed criminal case at an educational conference arose at the hearing on the rule petition. The discussants were not certain about who is the prosecutor's client. And, whoever the client may be, it is unclear whether a prosecutor must obtain informed consent before discussing the details of the criminal case.
The court denied the petition. The discussants at the hearing intimated that they may be providing further guidance on this issue.

 "The opinions and writings of the Attorney General have special significance in interpreting the Public Records Law, inasmuch as the legislature has specifically authorized the Attorney General to advise any person about the applicability of the Law." Milwaukee Journal Sentinel v. City of Milwaukee, 2012 WI 65, ¶ 41, 341 Wis. 2d 607, 815 N.W.2d 367 (2012); see also Schill v. Wis. Rapids. School Dist., 2010 WI 86, ¶ 106, 327 Wis. 2d 572, 786 N.W.2d 177 (2010); State v. Beaver Dam Area Dev. Corp., 2008 WI 90, ¶ 37, 312 Wis. 2d 84, 752 N.W.2d 295.
The attorney general also plays an enforcement role under the public records law when authorities deny open records requests. Wisconsin Stat. § 19.37(b) provides that after an authority denies access to a record, "[t]he requester may, in writing, request... the attorney general D to bring an action *490 for mandamus asking a court to order release of the record to the requester" and that the "attorney general may bring such an action." See also § 19.37(4) (attorney general may enforce forfeitures against a records custodian that "arbitrarily and capriciously denies or delays response to a request or charges excessive fees").

 At the circuit court, the Department of Justice rejected the Democratic Party's suggestion that the circuit court consider redaction of certain parts of the videos.

 Nichols v. Bennett, 199 Wis. 2d 268, 273-74, 544 N.W.2d 428 (1996).

 See, e.g., Juneau County Star-Times v. Juneau County, 2013 WI 4, ¶ 62, n.33, 345 Wis. 2d 122, 824 N.W.2d 457; Schill v. Wis. Rapids School Dist., 2010 WI 86, ¶ 10 n.10, 327 Wis. 2d 572, 786 N.W.2d 177.

 Nothing in the public records law or case law authorizes refusal in the instant case based on the identity of the requester or the purpose of the request.
The majority opinion (¶ 23) nonetheless relies on a single sentence in Hempel v. City of Baraboo, 2005 WI 120, 284 Wis. 2d 162, 544 N.W.2d 428, to justify scrutinizing the Democratic Party's request. Justice Prosser's opinion in Hempel, 284 Wis. 2d 162, ¶ 66, stated only that "[w]hen performing a *493 balancing test, however, a records custodian almost inevitably must evaluate context to some degree."
To jump from considering "context" to concluding that the identity and reasons for the request in the instant case weigh in favor of nondisclosure contravenes the public records law and our precedent.

 "[T]o the extent that [] privacy interests are implicated, they could be protected by a redaction of the Report in accordance with Wis. Stat. § 19.36(6)." Linzmeyer, 254 Wis. 2d 306, ¶ 40. Cf. Wis. Stat. § 801.21(4) (2015) (discussing motions to seal) ("In restricting access, the court will use the least restrictive means that will achieve the purposes of this rule and the needs of the requester.").

 See also Wis. Stat. § 19.36(1) ("Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).").

 See Hempel v. City of Baraboo, 2005 WI 120, ¶¶ 25-26, 284 Wis. 2d 162, 699 N.W.2d 240; Portage Daily Register v. Columbia Cty. Sheriff's Dep't, 2008 WI App 30, ¶¶ 12-14, 308 Wis. 2d 357, 746 N.W.2d 525 (the specificity requirement is designed to provide the requester with sufficient notice of the grounds for denial to enable the requester to prepare a challenge); ECO, Inc. v. City of Elkhorn, 2002 WI App 302, ¶ 24, 259 Wis. 2d 276, 655 N.W.2d 510; Wisconsin Dep't of Justice, Wisconsin Public Records Law Compliance Guide 15-18 (Nov. 2015), available at https://www.doj.state.wi.us/sites/default/ files/dls/2015—PRL-Guide.pdf (last visited Dec. 20, 2016).

 Linzmeyer, 254 Wis. 2d 306, ¶ 27.

 Wisconsin Dep't of Justice, Wisconsin Public Records Law Compliance Guide 2 (Nov. 2015).

 Wisconsin Dep't of Justice, Wisconsin Public Records Law Compliance Guide 2 (Nov. 2015).

 An affidavit of Ray Korte, the Director for the Wisconsin Department of Justice's Criminal Litigation Unit, is attached to the Department of Justice's Motion to Dismiss the Petition and Quash the Proposed Writ in the instant case. The affidavit states: "The attendees are almost exclusively prosecutors and DOJ staff. Former DAs and ADAs who continue to make themselves available as special prosecutors may also attend, but only if that person does not also provide defense attorney services." The affidavit further states: "The expectation of the presenters is that the audience is limited . . . and that the information shared is for use only by prosecutors and those assisting with prosecutions and investigations and, at times, by employees who aid crime victims."

 The circuit court impliedly found that, despite the Department of Justice's asserting that these seminars are closed to the public, attendees at the presentation were not bound to secrecy:
THE COURT: . . . What happens to the people like Mr. Verhoff and Mr. Kiefer who have flipped over to the defense side, are they under any obligation not to use any of this information in their pursuit of their client's causes?
[ASSISTANT ATTORNEY GENERAL]: Well, I guess I'll split that up. I don't know that there's any kind of agreement from these conferences. The understanding is these are for people who are in [sic] the prosecutorial side. But I guess it's always a risk whenever anyone knows something they'll flip and then for the other side at some point.. ..

 The judge was apparently referring to "To Catch a *499 Predator," a TV program that ran from 2004-2007. It was a reality television series that featured hidden camera investigations by the television program Dateline NBC. People were lured to meet with a decoy under the pretense of sexual contact with a minor and then were confronted on TV. In some episodes law enforcement officials were involved, leading to arrests. Wikipedia, To Catch a Predator, https://en.wikipedia.org/wiki/ To_Catch_a_Predator (last visited Dec. 20, 2016).
A spin-off book, To Catch a Predator: Protecting Your Children from Online Enemies Already in Your Home, was published in 2007. See Publishers Weekly, Feb. 12, 2007.

 See, e.g., Louise Tickle, How Police Investigators Are Catching Paedophiles Online, The Guardian (Aug. 22, 2012, 4:00 AM), https://www.theguardian.com/social-care-network/2012/aug/22/police-investigators~catching-paedophiles-online ("When caught... they say things like 'it was just a fantasy1 but you find them with lubricants and toys ...."); Walter Glenn, How to Hide Your Porn, Lifehacker (Feb. 20, 2014, 4:30 PM), http://lifehacker.com/how-to-hide-your-porn-1525454917; Paula McMahon, Feds: Broward Child Porn Suspect Used Encryption To Hide Files, SunSentinel (Sep. 23, 2015, 12:52 AM), http://www.sun-sentinel.com/local/broward/fl-child-pom-encryption-20150922-story.html; Susan Saulny, Sex Predator Accusations Shake a Wisconsin Town, N.Y. Times (Feb. 10, 2009), http://www.nytimes.com/2009/02/ll/us/llwiscon-sin.html?_r=0 (describing a high-profile Wisconsin case that is the subject of the 2013 video and how the perpetrator organized files on his computer); Ty E. Howard, Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files, 19 Berkeley Tech. L.J. 1227 (2004) (discussing how forensic investigators examine caches containing internet files and the legal factors and defenses in possession cases); Jason B. Sheffield & Douglas N. Peters, From Chat Room to Courtroom: The Internet, Experts, and Entrapment, Champion, Aug. 2015, at 34 (discussing how to use evidence to mount an entrapment defense and how to distinguish between fantasy roleplay and predatory behavior).

 Reply Brief of the Wis. Dep't of Justice & Kevin Potter at 5.

 Linzmeyer, 254 Wis. 2d 306, ¶ 33.

 See, e.g., Schwartz v. United States Drug Enf't Admin., No. 13CV5004CBARML, 2016 WL 154089, at *20 (E.D.N.Y. Jan. 12, 2016) ("[T]he DEA has not overcome FOIA's presumption of disclosure and must disclose the requested portion of the Video, subject only to the redaction discussed above.").

 See Corrected Opening Brief of the Wis. Dep't of Justice & Kevin Potter at 3-4, 17; Reply Brief of the Wis. Dep't of Justice & Kevin Potter at 5-6.

 The Department of Justice takes a similar approach to withholding the 2013 video, as well.

 For a supplemental order by Judge Hellerstein in the Southern District of New York releasing photographs, see American Civil Liberties Union v. Department of Defense, No. 04Civ.415(AKH), 2006 WL 1722574 (S.D.N.Y. 2006).

 On petition for a writ of certiorari, the United States Supreme Court "vacated" the judgment and remanded the case to the federal circuit court of appeals. The United State Supreme Court did not remand the case under FOIA. Rather, the remand was "for further consideration in light of Section 565 of the Department of Homeland Security Appropriations Act, 2010 . .. ." Dep't of Defense v. Am. Civil Liberties Union, 558 U.S. 1042 (2009).

 The circuit court reported that it "did a Google search of the perpetrator here and in a half a second came up with 15,300 entries about this case." Counsel for the Department of Justice agreed with the circuit court that coverage of the Stand case was widespread. My search located many articles, as well, including the following: Susan Saulny, Sex Predator Accusations Shake a Wisconsin Town, N.Y. Times (Feb. 10, 2009), http://www.nytimes.com/2009/02/ll/ us/llwisconsin.html?_r=01.

 Section 950.04(lv)(ag) provides:
Victims of crimes .. . [are] [t]o be treated with fairness, dignity, and respect for. .. privacy by public officials, employees, or agencies. This paragraph does not impair the right or duty of a public official or employee to conduct his or her official duties reasonably and in good faith.

 In addition to factoring in victims' rights, the majority's application of the balancing test to the 2013 video raises the same issues that I discuss above. As an alternative to relying on Foust, the majority opinion also applies the balancing test.

 Corrected Opening Brief of the Wis. Dep't of Justice & Kevin Potter at 8.

 Corrected Opening Brief of the Wis. Dep't of Justice & Kevin Potter at 13—14.

 Michael Joseph Gross, Sextortion at Eisenhower High, GQ (June 30, 2009), available at http://www. gq.com/story/wisconsin-high-school-sex-scandal-online-facebook ("Brad Schimel, Waukesha County D.A., says he hopes the Stand case will be 'a two-by-four upside the head to parents,' encouraging them to get involved in their children's lives online."); Laurel Walker, Stand gets 15 years in prison in Facebook coercion case, Milwaukee Journal Sentinel (Feb 24, 2010), available at http://archive.jsonline.com/news/waukesha/8525 2392. html ("After the sentence was imposed, with Stand taken immediately to prison, [then-District Attorney] Schimel said outside the courtroom that he wasn't sure this case, with all its publicity, was getting through to kids, because new cases of sexting have continued to occur. 'I'm just not sure they're hearing this message,' he said. 'I hope their parents are.'").

 This memorandum dated April 27, 2012, is available at https://www.doj.state.wi.us/sites/default/files/dls/act-283-advisory.pdf.
*511 See ¶ 38 n.4, supra, explaining that the court gives special weight to the Attorney General's opinions and writings on the public records law.

 The Compliance Guide states at 39:
2011 Wisconsin Act 283 created three statutory provisions, Wis. Stat. §§ 950.04(lv)(ag), (lv)(dr), and (2w)(dm), related to disclosure of personally identifying information of victims and witnesses by public officials, employees or agencies, which were intended to protect victims and witnesses from inappropriate and unauthorized use of their personal information. These statutes are not intended to and do not prohibit law enforcement agencies or other public entities from disclosing the personal identities of crime victims and witnesses in response to public records requests, although those public records duties should continue to be performed with due regard for the privacy, confidentiality, and safety of crime victims and witnesses.

 As the majority opinion acknowledges, the victims' identities were already disclosed publicly years ago. This consider *513 ation weighs in favor of disclosure of the 2013 video, or at least parts thereof. Linzmeyer, 254 Wis. 2d 306, ¶ 37.

 Reply Brief of the Wis. Dep't of Justice & Kevin Potter at 6 n.3.

 The 2013 video describes an undisclosed and traumatic fact about one of the unidentified victims. This reference might be redacted.